ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* STATE.

Opinion delivered June 15, 1908.

1. STATUTE—CONSTRUCTION—MEANING OF WORD "PERMANENTLY."—In the
act of May 1, 1905, relating to the protection of persons employed in
the construction and repair of railway equipment, which provides
that "it shall be unlawful for any railroad company or person owning,
controlling or operating any railroad to build, construct or repair
railroad equipment, without first erecting and maintaining at every
division point a building or shed over the repair tracks, same to be
provided with a floor where such construction or repair [work] is
*permanently* done, so as to provide that all men *permanently* employed
in the construction and repair [of] cars, trucks, and other railroad
equipment shall be under shelter during snows, sleet, rain and other
inclement weather," the word "permanently" should not be construed
literally, but should be taken to mean *constantly* or *regularly*. (Page
521.)

2. CONSTITUTIONAL LAW—EQUALITY OF OPERATION OF STATUTE.—The act
of May 1, 1905, in providing that railroad companies shall furnish
protection from the weather to their employees engaged in building,
constructing or repairing railroad equipment, does not offend against
the prohibition of inequality in the Fourteenth Amendment because
it does not apply to persons and companies engaged in the building,
construction or repair of railroad equipment who do not own or
operate any lines of railroad, if it does not appear that there are any
such corporations or persons so engaged in this State. (Page 522.)

3. SAME—EXCESSIVE PENALTIES.—The act of May 1, 1905, imposing upon
railroad companies or persons owning, controlling or operating any
railroad line a penalty of not less than $25 nor more than $100 for
each day's failure to comply with its requirements, does not impose
unreasonable penalties. (Page 522.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans,*
Judge, affirmed.

STATEMENT BY THE COURT.

Information was filed in Crawford County against the ap-
pellant railroad company, charging it with a misdemeanor in
having violated the act of May 1, 1905, entitled "An act to pro-
vide for the protection of mechanics, laborers and other persons
employed in the construction and repair of railway equipment,
and providing a punishment for the violation thereof." The
act reads as follows:

"Section 1. It shall be unlawful for any railroad company or corporation, or other persons who own, control or operate any lines of railroad in the State of Arkansas, to build, construct, or repair railroad equipment, without first erecting and maintaining at every division point a building or shed over the repair tracks, same to be provided with a floor where such construction or repair [work] is permanently done, so as to provide that all men permanently employed in the construction and repair [of] cars, trucks and other railroad equipment shall be under shelter during snows, sleet, rain and other inclement weather.

"Section 2. Every corporation, person or persons, manager, superintendent or foreman of any company, corporation, person or persons, who shall fail or refuse to comply with the provisions of this act after the first day of November, 1905, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than twenty-five dollars ($25) nor more than one hundred dollars ($100); and each and every day that said railroad company, corporation, person or persons, manager, foreman or agent of any such railroad company, corporation, person or persons, shall refuse or fail to comply with the provisions of this act shall constitute a separate and distinct violation thereof."

Section 3 contains the usual repealing clause, and declares the act to be in force from and after the 1st day of November, 1905.

The defendant was found guilty, and has appealed. The evidence adduced at the trial proved these facts: Van Buren is a division point on the line of the appellant railroad, and it maintained repair tracks there which were built in 1903. The number of men employed in repair work varied, but a force was regularly employed, and was about fifteen or twenty at the time the company was charged with the violation of the act and usually averaged about that many. There was no building or shed over the repair tracks, nor a floor where the construction or repair work was done. There was no protection from the weather for employees engaged in this repair work. The repairs usually done were substituting new for broken knuckles, putting in draft timbers, bolsters, end sills and putting roofs on

cars and supplying new trucks and wheels for defective or broken ones. Generally speaking, the work done on these repair tracks was that of putting missing or defective or broken parts on cars which were necessary to enable the car to keep in transit, and component parts of the cars were kept in stock for this purpose, and other light repairs that are necessary to conform to the M. C. B. rules and regulations covering interchange of cars. The repairs done at this point were "running repairs." The shops at Baring Cross, near Little Rock, are where the general and permanent repair and construction work of the company is done for the territory in which Van Buren is situated. Many of the repairs made at these repair tracks are just as permanent as those made at Baring Cross or any other shops. The men engaged in this work were employed by the hour, and were at liberty to check out and cease work whenever the weather was stormy or inclement. The company posted notice to that effect. There are frequently as many as fifty or sixty cars, and sometimes more, on these tracks for repairs at one time.

*Lovick P. Miles,* for appellant.

1. The act is void as an arbitrary classification of those engaged in the building, construction or repairing of railroad equipment, in violation of the Constitution of Arkansas and of the United States. 14 Amendment, § 1 U. S. Const.; art. 5, § 25, Const. Ark.; 165 U. S. 150; 184 U. S. 555; 108 Mich. 527; 49 Ark. 335; *Id.* 293; *Id.* 167; 75 Ark. 542; 146 U. S. 39; 185 U. S. 325.

2. It is void because of its penalty provision, being of such nature as necessarily to restrain the companies affected to submit rather than contest the act, whereby they are deprived of the legal protection of the laws. 183 U. S. 102.

3. In any event the act does not apply to conditions shown to have existed at Van Buren.

*William F. Kirby,* Attorney General, and *Daniel Taylor,* Assistant, for appellee.

Not all class legislation is void, but only that legislation which arbitrarily, capriciously, oppressively or viciously operates upon a class selected and segregated by the law-mak-

ing power without substantial reason. 113 U. S. 27. The Fourteenth Amendment only proposed to prevent an unreasonable, arbitrary and inequitable exercise of the law-making power, —it does not take away from the State its inherent power to provide for the health, morals, safety and comfort of its people. "When a State legislature has declared that, in its opinion, policy requires a certain measure, its action should not be disturbed by the courts, under the Fourteenth Amendment, unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched." 194 U. S. 267. The presumption that a statute is constitutional continues until the attacking party has convinced the court of its invalidity, all doubts being resolved in favor of the statute; and it is not sufficient to show that the statute *may possibly* become unconstitutional, but it must appear that it *is now* void under prevailing conditions, and that it *does* operate unequally. 96 U. S. 521. For similar and analogous cases, see 25 L. R. A. 759; 26 *Id.* 317; 127 U. S. 205; 165 U. S. 1; 81 Ark. 304; 69 Ark. 521; 165 U. S. 268; 194 U. S. 267; 176 U. S. 114; 179 U. S. 89; 142 U. S. 339.

The statute applies to conditions existing at Van Buren. The company does not possess the right to contract away the police power of the State nor to evade it by such means. It can not enter into agreements that in effect nullify the law. 58 Ark. 437; 64 Ark. 83.

The act is not a special, but a general law. 58 Ark. 437.

HILL, C. J., (after stating the facts.) The questions are presented on appeal: Does the act apply to the conditions shown to exist at Van Buren? Does the act violate the Constitution of the United States or the Constitution of Arkansas?

I. The jury found, and correctly, under the facts, that the work done at Van Buren on the repair tracks was such as was contemplated by the act. The use of the word "permanent" in the act is inapt. The first use of it, "where such work is permanently done," means "constantly"; and "constant" is one of its synonyms. The second use of it, "all men permanently employed" in the repair of cars, is equivalent to "all men regularly employed." Taking the act as a whole, and reading it in connection with its title and the evident purpose thereof, its

meaning is reasonably clear. It is the duty of the court to disregard inapt words used and to enforce it according to its intent gathered from the whole act, and not from any particular word or words therein. Even if the literal use of the word "permanent" is accepted, the work done at Van Buren is within it, for repairs which were made there were usually as permanent as those made elsewhere. For instance, as one of the witnesses illustrated, if a sill was put in, it was as permanent as if done at Baring Cross. But this literal interpretation was not intended by the Legislature.

II. Was the act constitutional? The contention of counsel is thus stated: "A brief analysis of the act discloses its fatally arbitrary classification. It applies only to any railroad company or corporation or other persons who own, control or operate any lines of railroad in the State of Arkansas engaged in the building, construction or repair of railroad equipment at every division point. Any other corporation or other person engaged in the building, construction or repair of railroad equipment within this State may avoid the burden imposed by this act and engage in the building, construction or repair of railroad equipment without limit and compel those engaged in this work to pursue their labor without shelter during snow, sleet, rain and other inclement weather."

It is not shown here, as it was in *Cotting* v. *Kansas City Stockyards Co.*, 183 U. S. 79, that as a matter of fact the law operated only upon one corporation, although others in like and similar conditions were not affected by it, owing to a classification based entirely upon volume of business. Nor was it shown here, as in *Yick Wo* v. *Hopkins*, 118 U. S. 356, that, although fair on its face, yet the practical operation of the law made it fall unequally upon persons similarly situated.

The contention here is that the act shows upon its face an arbitrary selection of railroad corporations who own, control and operate lines of railroad in the State, engaged in the building, construction or repair of railroad equipment at division points to bear the burden imposed, and excludes by this selection any other persons or corporations who may be engaged in the construction, building or repairing of railroad equipment. It is stated at the bar that there are no such corporations or

persons engaged in such business in this State, and, so far as the court knows from such sources as it is proper for it to take information from, this statement is true. It is asserted, and probably the court could take cognizance of it as a matter of common knowledge, that there are persons and corporations in other States engaged in the building, construction and repair of railroad equipment who do not own or operate any lines of railroad.

The argument is that, under this act, it is possible for a commercial corporation or private individual to engage in this business in Arkansas, and when that happens, which may occur at any time, then the act will fall unequally upon persons similarly situated and engaged in like occupations, and thereby be offensive to the equal protection of the law provision.

The court in *Williams* v. *State,* 85 Ark. 464, 471, said: "The Legislature, in framing this statute, met a condition which existed, and not an imaginary or improbable one." While it is not improbable that some commercial corporation may engage in this business in this State, yet that is a supposed and imaginary objection to the operation of the act, and it was "a condition, not a theory," which called forth this legislation.

The Supreme Court of the United States, in *Ozan Lumber Co.* v. *Union County Bank,* 207 U. S. 251, in referring to a statute of this State which exempted from its terms "merchants and dealers who sell patented things in the usual course of business," said:

"Exceptional and rare cases, not arising out of the sale of patented things in the ordinary way, may be imagined where the general classification separating the merchants and dealers from the rest of the people might be regarded as not sufficiently comprehensive, because in such unforeseen, unusual and exceptional cases the people affected by the statute ought, in strictness, to have been included in the exception. See opinion of circuit court herein, 127 Fed. Rep., *supra.* But we do not think the statute should be condemned on that account. It is because such imaginary and unforeseen cases are so rare and exceptional as to have been overlooked that the general classification ought not to be rendered invalid. In such case there is really no substantial denial of the equal protection of the laws within the meaning of the amendment.

"It is almost impossible, in some matters, to foresee and provide for every imaginable and exceptional case, and a legislature ought not to be required to do so at the risk of having its legislation declared void, although appropriate and proper upon the general subject upon which such legislation is to act, so long as there is no substantial and fair ground to say that the statute makes an unreasonable and unfounded general classification, and thereby denies to any person the equal protection of the laws."

The difference between the classification which does not cover every supposed case, and yet is valid, and one where the classification applies to a large number of people in like and similar conditions, and is consequently invalid, is well illustrated in the Ozan Lumber Company case and *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540.

"There is no objection to legislation being confined to a peculiar and well defined class of perils, and it is not necessary that they should be perils which are shared by the public, if they concern the body of citizens engaged in a particular work." *Minn. Iron Co.* v. *Kline,* 199 U. S. 593. Illustrating and applying this principle, see *Holden* v. *Hardy,* 169 U. S. 366; *Missouri Pac. Ry. Co.* v. *Mackey,* 127 U. S. 205; *Minneapolis & St. L. Ry. Co.* v. *Beckwith,* 129 U. S. 26.

The court is unable to find the classification here made offensive to the equality clause of the Constitution as construed by the Supreme Court of the United States, whose decisions are binding on this subject.

It is also contended that the act is void on account of the unreasonable penalties provided for its violation, and the recent case of Ex parte *Young,* decided by the Supreme Court of the United States on March 3d, is cited to sustain it. See 209 U. S. 123. An examination of the act there condemned and the act here will show the entire inapplicability of the doctrine there announced.

The judgment is affirmed.