# BOOTH *v.* STATE OF INDIANA.

## ERROR TO THE SUPREME COURT OF THE STATE OF INDIANA.

No. 231. Argued April 19, 1915.—Decided May 3, 1915.

As the police power of the State extends to regulating coal mining, it cannot be limited by moments of time and differences of situation.

Where the highest court of the State has sustained a police statute under the State Constitution, this court is only concerned with questions of constitutionality under the Federal Constitution.

The Fifth Amendment is not applicable to the States.

The decision of the highest court of the state that the method of calling a police statute into operation is proper does not involve a Federal question reviewable by this court.

A police statute requiring owners of the mine to furnish certain conveniences for coal miners on request of a specified number of employés is not unconstitutional as denying equal protection of the law because it may be applied to one mine where some of the employés demand it, and not to another where such demand is not made by the specified number. *McLean* v. *Arkansas*, 211 U. S. 539.

The statute of Indiana requiring owners of coal mines to erect and maintain wash-houses for their employés at the request of twenty or more employés is not unconstitutional under the Fourteenth Amendment either as depriving the mine owners of their property without due process of law or as denying them the equal protection of the law.

100 N. E. Rep. 563, affirmed.

THE facts, which involve the constitutionality under the due process and equal protection provisions of the Fourteenth Amendment of the coal mine wash-house law of Indiana, are stated in the opinion.

*Mr. Henry W. Moore*, with whom *Mr. Ulric Z. Wiley* and *Mr. T. J. Moll* were on the brief, for plaintiff in error:

The act under which plaintiff in error was convicted is not a valid exercise of police power; it does not serve the purpose for which it was intended.

The act is not in harmony with the principles of popular government; it goes beyond what is necessary and violates the purpose of the Fourteenth Amendment.

The act deprives a citizen of property without compensation or due process of law; is class legislation and violates both state and Federal Constitutions; it discriminates between persons equally entitled to its protection.

The legislature cannot delegate its authority to another body or private person or persons, nor can it abdicate its functions except to lawful public agencies.

A police regulation cannot be established except by the law-making power.

The act is in the nature of a "referendum" and is therefore invalid. It is also an arbitrary exercise of police power as applied to plaintiff in error.

Numerous authorities support these contentions.

*Mr. Richard M. Milburn* and *Mr. Leslie R. Naftzer*, with whom *Mr. Thomas M. Honan*, Attorney-General for the

State of Indiana, and *Mr. Thomas H. Branaman*, were on the brief, for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

Error to review a judgment of conviction for the violation of a statute of Indiana entitled "An act requiring the owners and operators of coal mines and other employers of labor to erect and maintain wash-houses at certain places where laborers are employed, for the protection of the health of the employés, and providing a penalty for its violation." Section one reads as follows:

"*Coal Mining—Wash-houses for Laborers.*

"Section 1. Be it enacted by the General Assembly of the State of Indiana, That for the protection of the health of the employés hereinafter mentioned, it shall be the duty of the owner, operator, lessee, superintendent of, or other person in charge of every coal mine or colliery, or other place where laborers employed are surrounded by or affected by similar conditions as employés in coal mines, at the request in writing of twenty (20) or more employés of such mine or place, or in event there are less than twenty (20) men employed, then upon the written request of one-third (1/3) of the number of employés employed, to provide a suitable wash-room or wash-house for the use of persons employed, so that they may change their clothing before beginning work, and wash themselves, and change their clothing after working. That said building or room shall be a separate building or room from the engine or boiler room, and shall be maintained in good order, be properly lighted and heated, and be supplied with clean cold and warm water, and shall be provided with all necessary facilities for persons to wash, and also provided with suitable lockers for the safe-keeping of clothing. Provided, however, that the owner, operator, lessee, super-

intendent of or other person in charge of such mine or place as aforesaid, shall not be required to furnish soap or towels."

It is provided in § 2 that a violation of the act shall be a misdemeanor and punished by a fine, to which may be added imprisonment.

The prosecution was started by an affidavit charging Booth, he being the superintendent of a mine belonging to the Indiana Coal Company in one of the counties of the State, with a violation of the act for failure to provide a wash-house or wash-room as required by the statute after request in writing from twenty of the employés of the mine.

A motion to quash the affidavit and dismiss the charge was made on the grounds, stated with elaborate specifications, that the affidavit did not state an offense against the State of Indiana or the United States and that the statute violated both the constitution of the State and the Constitution of the United States.

The motion having been overruled, upon trial Booth was found guilty and fined one dollar and costs. He made a motion in arrest of judgment, repeating without details the grounds that he had charged in his motion to dismiss. The conviction was affirmed by the Supreme Court of the State. (100 N. E. Rep. 563.)

The record contains seventeen assignments of error. Plaintiff in error, however, waives five of them and is content to present his contentions in the other twelve. These contentions are, stated in broad generality, that the statute under review is in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and certain articles of the constitution of the State of Indiana.

We are concerned only with the contention based on the Fourteenth Amendment, as the Fifth Amendment is not applicable to the States and the conformity of the

statute to the constitution of the State of Indiana has been adjudged by the Supreme Court of the State.

The specifications under the Fourteenth Amendment are: (1) That the statute deprives plaintiff in error of his property without due process of law; and (2) denies him the equal protection of the law.

The Supreme Court rejected both contentions, deciding that the statute was a legal exercise of the police power of the State, and the specific objection that the statute was invalid because it only applies to coal mines and not to other classes of business the court said was disposed of by *Barbier* v. *Connolly*, 113 U. S. 27, and *Soon Hing* v. *Crowley*, 113 U. S. 703, 708. The court quoted from the latter case as follows: "The specific regulation for one kind of business, which may be necessary for the protection of the public, can never be the just ground of complaint because like restrictions are not imposed upon other business of a different kind."

Plaintiff in error, to sustain his contentions and to combat the conclusions of the Supreme Court, enters into a wide consideration of the police power. It has been so often discussed, that we may assume that both its extent and limitations are known. Their application in the present case can best be determined by considering the objections to it.

The first objection in the case at bar seems to be that the statute "applies solely and specifically to a particular class, engaged in a particular business, and is not in the interest of the public generally, as distinguished from a particular class." And it is further said that "it is a matter of common knowledge, of which courts take judicial notice, that the 'class' to which the act applies constitutes a very small percentage of population, and this being true, the act could not possibly be in the interest of the public health of the commonwealth."

The objection is answered by the cases already cited, by

*Holden* v. *Hardy*, 169 U. S. 366, and *McLean* v. *Arkansas*, 211 U. S. 539; and further comment is unnecessary.

But a distinction is sought to be made between what a legislature may require for the safety and protection of a miner while actually in service below ground and that which may be required when he has ceased or has not commenced his labors. Cases are cited which, upon that distinction, have decided that when a miner has ceased his work and has reached the surface of the earth his situation is not different from that of many other workmen and that, therefore, his rights are not greater than theirs and will not justify a separate classification.

We are unable to concur in this reasoning or to limit the power of the legislature by the distinctions expressed. Having the power in the interest of the public health to regulate the conditions upon which coal mining may be conducted, it cannot be limited by moments of time and differences of situation. The legislative judgment may be determined by all of the conditions and their influence. The conditions to which a miner passes or returns from are very different from those which an employé in work above ground passes to or returns from, and the conditions of actual service in the cases are very different, and it cannot be judicially said that a judgment which makes such differences a basis of classification is arbitrarily exercised, certainly not in view of the wide discretion this court has recognized, and necessarily has recognized, in legislation to classify its objects.

It is further said that the act "is inoperative in itself, for the reason that it can only be put into operation by the will and election of a specific number of the 'class' to which it applies, and consequently it fastens a burden upon the owners and operators of coal mines, which is 'a manifest injustice by positive law.'" The purpose of the comment, other than to give accent to the contention that the act has special operation, is part of the view elsewhere

urged that the provision is a delegation of legislative power. But with this objection we are not concerned. The Supreme Court of the State decided that the law could be called into operation by petition, and in the decision no Federal question is involved.

It is, however, further objected that the law discriminates because it may be applied to one mine and not to another, all other conditions being the same but the desire of the miners—indeed, discriminates upon a distinction more arbitrary than that, upon the desire of twenty in one mine as against a lesser number, nineteen, it may be, in another. The objection is a familiar one and has an instance and answer in *McLean* v. *Arkansas*, 211 U. S. 539. It is the usual ground of attack upon a distinction based on degree, and seems to have a special force when the distinction depends upon a difference in numbers.

But there are many practical analogies. The jurisdiction of a court is often made to depend upon amounts apparently arbitrarily fixed. For instance, the jurisdiction of the District Court of the United States (formerly the Circuit Court) is limited to civil suits in law and equity in certain instances in which the amount in controversy is $3,000. It could be objected, as it is here objected, that the amount is arbitrary and that there cannot be any difference in principle between suits for $3,000 and suits for $2,999, a distinction dependent upon one dollar. Indeed, in more acute illustration, the distinction may be made of one cent only. And so might there be objection to any amount which might be selected, as it might be also to any number of petitioning miners which the legislature of Indiana might have selected. Indeed, would not an objection have the same legal strength if the law had been made to depend upon anything less than unanimity of desire? To require that it might well have been thought by the legislature would render the legislation nugatory, and that a lesser number would call it into exercise and

attain its object. The conception, no doubt, was that a
lesser number—indeed, the number selected—would be
fairly representative of the desire and necessity of the
miners and that use would breed a habit, example induce
imitation and a healthful practice starting with a limited
number might become that of all. And such consumma-
tion justified the effort, the manner adopted attaining the
end sought as well as if not better than a direct and
peremptory requirement of the miners and mine owners.
The choice of manner was under the circumstances for the
legislature and its choice was legal if it had the power to
enact the law at all. Plaintiff in error disputes such power
and thereby presents in its most general form his conten-
tion against the validity of the statute.

The contention seems to be independent of the objec-
tions that we have considered, and yet in counsels' dis-
cussion those objections and others are so mingled that
it is impossible to discern which they consider especially
vitiate the law and take it out of the power of government
to enact.

The charge of its special application to coal mines and
its other features of discrimination we have passed upon.
The charge that it has no relation to health, we are not
disposed to dwell upon. Counsel seem to think if the
washing places were required to be put underground in
connection with or in proximity to the working places, the
law would be relieved from some criticism.

There remains to be considered only the contention
that the law "is, within itself, a dead letter." And it is
said that "it would forever lie dormant if not called into
exercise and activity by the request of private persons."
Or, as plaintiff in error otherwise expresses what he thinks
to be the evil of the law, it "is not enforceable by any
power which the state government possesses, under its
constitution, or its laws enacted thereunder, but it is en-
forceable only upon the demand, the whim or the election

of a limited number of employés in the coal mining business." And it is declared that "this is the exercise of an arbitrary power, for an arbitrary private right, and against a private business."

We have quoted counsels' language in order to give them the strength of their own expressions of what they consider the vice of the law, but manifestly it is but a generalization from the particular objections which we have considered, and those objections we have sufficiently discussed.

*Judgment affirmed.*