## CHICAGO & N. W. RY. CO. v. RAILROAD AND WAREHOUSE COMMISSION OF MINNESOTA et al.

(District Court, D. Minnesota, Third Division.   May 15, 1922.)

1. Injunction ⊚⟷103—Destruction of property rights by criminal proceedings may be enjoined.

Though equity has generally no power to enjoin criminal proceedings or to prohibit the enforcement of an unconstitutional criminal law, it may afford relief by injunction where property rights are involved, and are threatened by destruction by criminal proceedings under an alleged unconstitutional law.

2. Courts ⊚⟷262(2)—Remedy at law by appeal from commission's order held not to preclude injunction; "adequate remedy at law."

The remedy at law against the enforcement of an alleged unconstitutional statute by appeal from an order of the state commission, which was prerequisite to criminal proceedings under the statute, to the state courts, and thereafter to the United States Supreme Court, does not preclude equitable relief by the United States District Court since the "adequate remedy" at law, contemplated by Judicial Code, § 267 (Rev. St. § 723 [Comp. St. § 1244]), must be one which is as prompt and efficient as the equitable remedy, one to which plaintiff may resort of his own volition, and one in the federal court, and not merely in the state court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adequate Remedy.]

3. Constitutional law ⊚⟷241—Classification of points where buildings are required for repairs of railroad cars held not invalid.

Laws Minn. 1919, c. 514, as amended by Laws 1921, c. 481, requiring companies engaged in the construction or repair of railroad cars to erect and maintain a building or buildings at every point· where there are as many as six men employed at one time for a period of not less than 30 days on such work, is not invalid because of the method of classification, which, while not logically perfect, is practicable, and manifests the purpose to include the more important repair points and exclude the others.

4. Master and servant ⊚⟷12—State regulation of railroad shops within "police power."

Laws Minn. 1919, c. 514, as amended by Laws 1921, c. 481, requiring companies engaged in the repair or construction of railroad cars to erect and maintain buildings in which the work shall be done, is not invalid as arbitrary interference with the management of the railroad company of its own property, but is an exercise of the state's police power, which is not

---

⊚⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

capable of exact definition, but embraces regulations to promote public convenience or the general prosperity or welfare, as well as those specifically intended to promote the public safety or public health.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Police Power.]

**5. Master and servant ⬅➡12—Sate regulation of railroad shops held not invalid in making specifications.**

The numerous minute specifications in Laws Minn. 1919, c. 514, § 3, as amended by Laws 1921, c. 481, for shops in which railroad cars shall be constructed or repaired, is not an arbitrary interference with the management of railroad property, in view of the provision giving the state Railroad and Warehouse Commission power to allow deviations from the specifications, since it will not be assumed that the state commission will exercise the power given it arbitrarily, and, if it does, the railroad has the right to appeal to the courts.

**6. Commerce ⬅➡58—Regulation of railroad repair shops does not directly burden interstate commerce.**

Laws Minn. 1919, c. 514, as amended by Laws 1921, c. 481, requiring buildings to be erected for the construction and repair of railroad cars, is not invalid because it interferes with interstate commerce, since the interference with such commerce is indirect and incidental only.

**7. Constitutional law ⬅➡42—Railroad cannot complain of regulation requiring buildings to protect car repairers because it disregards other employés.**

The objection that Laws Minn. 1919, c. 514, as amended by Laws 1921, c. 481, is invalid because it protects only railroad employés who are repairing or constructing cars, and not other employés working on other structures, cannot be raised by the railroad company, where the other employés are not complaining, and especially in view of the element of practicability of including such other employés.

**8. Constitutional law ⬅➡241—Objection to act requiring buildings for car repairers that business of different kind was not also regulated does not invalidate the act.**

Laws Minn. 1919, c. 514, as amended by Laws 1921, c. 481, requiring buildings for the construction or repair of railroad cars, is not invalid because it is not based on the relation of employer and employé, nor on the dangerous or unhealthful character of the work, but solely in the character of the articles made or repaired, since regulations for one kind of business necessary for the protection of the public are not objectionable, because like restrictions are not imposed on other business of a different kind.

**9. Master and servant ⬅➡11—Regulation within police power not invalidated by cost.**

The cost and inconvenience to a railroad company necessary to comply with a statute enacted under the police power for the protection of employés is not an objection to the validity of the act, unless such cost and inconvenience are very great.

**10. Constitutional law ⬅➡303—Penalty provisions of act under police power not effective until order by state railroad commission, which is subject to judicial review, do not invalidate act.**

The penalty provisions of Laws Minn. 1919, c. 514, as amended by Laws 1921, c. 481, do not render the statute unconstitutional, in view of its provision that, before they come into effect, an order of the state Railroad and Warehouse Commission is necessary, which order is subject to judicial review, under Gen. St. Minn. 1913, § 4191, as amended by Laws 1917, c. 291 (Gen. St. Supp. 1917, § 4191), and sections 4192, 4200.

**11. Master and servant ⬅➡12—State regulation of railroad shops not invalidated by federal regulation as to jurisdiction of Labor Board.**

The jurisdiction of the Railroad Labor Board, under Transportation Act 1920, §§ 300–316, is confined to disputes arising between carriers and

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

their employés, and does not invalidate Laws Minn. 1919, c. 514, as amended by Laws 1921, c. 481, giving the state Railroad and Warehouse Commission jurisdiction over railroad repair shops.

**12. Commerce ⬤⇒8(1)—State statute regulating car repair shops held to conflict with federal Safety Appliance Act, requiring repairs to defective cars at place where defect discovered.**

Laws Minn. 1919, c. 514, as amended by Laws 1921, c. 481, requiring companies engaged in the construction or repair of railroad cars to maintain buildings for such work, is in conflict with the federal Safety Appliance Act April 14, 1910, § 4 (Comp. St. § 8621), requiring defective cars on the lines of interstate carriers to be repaired at the place where they are first discovered to be defective, if feasible, otherwise at the nearest available repair point, and the federal statute is paramount, and controls the state statute in so far as they conflict.

**13. Commerce ⬤⇒10—State statute conflicting with federal act held not invalid as to field not covered by the latter.**

The conflict between Laws Minn. 1919, c. 514, as amended by Laws 1921, c. 481, requiring buildings for the construction and repair of railroad cars, and the federal Safety Appliance Act (Comp. St. § 8605 et seq.), does not render the state statute wholly void, but merely limits its scope and leaves it still a field of operations.

**14. Health ⬤⇒21—Prohibition of paint-spraying machines in railroad shops not within police power.**

The prohibition by Laws Minn. 1919, c. 514, as amended by Laws 1921, c. 481, against the use of paint-spraying machines within buildings for the construction and repair of railroad cars, is not a valid exercise of the police power, in view of evidence that the paint used no longer contains the ingredients which were dangerous to health, and that the state itself makes use of paint-spraying machines inside of buildings.

**15. Constitutional law ⬤⇒62—State statute as to buildings for repair of railroad cars held not invalid, as delegating legislative power to Railroad and Warehouse Commission.**

Laws Minn. 1919, c. 514, as amended by Laws 1921, c. 481, giving the Railroad and Warehouse Commission power to determine what portion of the car repair tracks shall be covered by shops, and to make an order specifying the buildings to be erected for that purpose, and authorizing it to permit deviations from the specifications for such shops, is not invalid, as an attempted delegation of legislative power to the commission.

**16. Criminal law ⬤⇒13—Penal statute requiring protection of employés from heat, cold, and inclement weather is too indefinite.**

Laws Minn. 1919, c. 514, § 1, requiring buildings for the constructon or repair of railroad cars, so as to protect employés from heat, cold, snow, or other inclement weather, and section 4, making it unlawful to require employés engaged in such work to work outside of the buildings in rain, heat, cold, snow or other inclement weather, which is a criminal statute, the violation of which is a misdemeanor punishable by a fine of from $100 to $500, is too uncertain and indefinite to be valid, since the words "heat," "cold," and "inclement weather" are indefinite and uncertain, so that the authority to define a statutory crime, which is vested only in the Legislature, must be exercised by another.

**17. Statutes ⬤⇒64(1)—Partial invalidity makes entire statute void, unless contrary intention manifested.**

A part of a statute may be enforced as constitutional, though another part is inoperative and void, only where the parts are so distinctly separable that each can stand alone, and where the court is able to declare that the intention of the Legislature was that the part pronounced valid should be enforceable, even though the other part should fail.

**18. Statutes ☞64(2)—Partial invalidity of statute for protection of railroad car employés held to invalidate entire act.**

> The invalidity of the provisions in Laws Minn. 1919, c. 514, prohibiting employment of car repairers in heat, rain, cold, snow, or other inclement weather, invalidates the entire act, which requires the construction of buildings in which the work may be carried on, since the invalid portions of the statute are vital, and embody the real ground and purpose of its passage.

In Equity. Suit by the Chicago & Northwestern Railway Company against the Railroad and Warehouse Commission of Minnesota and others to enjoin the enforcement of a state statute. On final hearing. Decree for permanent injunction directed.

This is a suit brought by plaintiff for an injunction to restrain the defendants and each of them from enforcing against the plaintiff certain state laws of the state of Minnesota, to wit, chapter 514, Session Laws 1919, as amended by chapter 481, Session Laws of 1921; the latter act amending section 3 only of the original act. Jurisdiction is based upon the ground of diversity of citizenship, and also upon the ground that the suit is one arising under the Constitution and laws of the United States; jurisdictional amount being sufficient. At the commencement of the suit, a temporary restraining order was issued. By written stipulation of the parties, duly filed, a hearing for an interlocutory injunction before three judges was expressly waived, the temporary restraining order continued in force, and the case has been brought on for final hearing, and heard upon the merits, upon bill, answer, and proof.

R. L. Kennedy, of St. Paul, Minn., Brown, Somsen & Sawyer, of Winona, Minn., and F. W. Sargent, of Des Moines, Iowa, for plaintiff.

Clifford L. Hilton, Atty. Gen., and Montreville J. Brown and Henry C. Flannery, Asst. Attys. Gen., for defendants.

BOOTH, District Judge (after stating the facts as above). The statute in question reads as follows:

### "Chapter 514—H. F. No. 143.

"An act requiring railroads, car shops and other concerns manufacturing or repairing cars, car trucks, and other equipment used as conveyances by rail, for either freight or passengers, and other equipment used in repair work or otherwise, and operated by railroad companies, to provide buildings that will protect their employés from heat, rain, cold, snow, and other inclement weather.

"Be it enacted by the Legislature of the State of Minnesota:

"Section 1. *Buildings for Employés.*—That every person, firm, copartnership, corporation, or receiver thereof, engaged in the construction or repairing of railroad cars, car trucks, or other equipment used for conveyance by rail, shall erect and maintain a building or buildings at every station or point where there are as many as six (6) men employed at one time for a period of not less than thirty (30) days, on the work of construction or repairing of such cars, car trucks, or other such equipment; the building or buildings to cover a sufficient portion of the repairing or construction company's yards or tracks so that all employés engaged in such work shall be protected from heat, rain, cold, snow, or other inclement weather, while working at such work.

"Sec. 2. *Application.*—The provisions of this act shall not apply to the repairing of conveyances while the same are en route as part of a train, nor shall it apply to cars loaded with live stock or perishable freight, where trains are being held for the movement of said cars."

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Section 3 of chapter 514, General Laws 1919, as amended by chapter 481, Session Laws 1921:

"Sec. 3. *Specifications.* All buildings to be erected hereunder shall substantially comply with the following specifications:

"In buildings that cover more than one track the distance between the inside rails of each track shall not be less than twelve lineal feet. Between the walls of the building and the outside rails there shall be a distance of ten lineal feet, except that where buildings have been constructed prior to January 1, 1921, the distance between the walls thereof and the outside rails shall not be less than seven and one-half feet. The building or buildings shall not be less than twenty feet high at the eaves. Each building shall be enclosed from roof to ground and shall have glass windows on each side with a space of not to exceed twelve feet apart. The side windows shall not be less than nine feet high, and not less than four feet wide. Windows shall be in three sections and sections shall be provided with pivoted or sliding sash. The buildings shall be equipped with side and end doors. The end track doors shall be not less than six feet wide and sixteen feet high, and there shall be two such doors for each repair track covered by the building. *Side doors shall be provided for each side of building. The size of said doors shall be great enough to allow the convenient handling of the larger materials required to be taken into said building.* The roof shall be provided with a cupola the entire length of the building, and be equipped with side windows of not less than three feet in width and six feet in height, having pivot and opening device that shall be at all times operative. One cupola or monitor shall be provided for each building that contains not to exceed four repair tracks. For buildings inclosing more than four tracks, skylights shall be provided to insure adequate light over each car, that men are required to work on. In lieu of above cupola, monitors and skylights, sawtooth roof construction may be used or monitors crosswise of the buildings to provide adequate light and ventilation. The buildings shall be equipped with necessary heating facilities, and shall at all times have drainage that will keep them in clean and sanitary condition. They shall be equipped with sanitary drinking fountains where clean wholesome drinking water can be obtained. A sufficient number of sanitary lavatories shall be provided for said employés and sanitary toilets shall be provided and kept properly clean, ventilated and free from odor, as required by chapter 491 of the General Laws of 1919, sections 9, 10, 11, and 12. All scaffolding used in such buildings shall be made of clear lumber free of all knots, and shall be kept in first-class condition at all times. The use of paint spraying machines shall not be permitted inside such buildings. It shall be the duty of the Railroad and Warehouse Commission to determine as soon as practicable what portion of the repair or construction tracks of each railroad in the state it shall be necessary to cover with such building or buildings in order to comply with section one hereof, and said commission shall thereupon make an order as to each railroad in the state specifying the size of the building or buildings necessary at each location where such repair or construction work is carried on, and it shall thereupon be the duty of each railroad company to forthwith erect such buildings and have all the same ready for occupancy not later than September 1, 1922. *The Railroad and Warehouse Commission may, upon application made, after a thorough investigation, permit any person, firm or corporation subject to the provisions of this act, to deviate from the specifications and requirements hereinbefore provided for, when, in the judgment of said commission, a strict compliance with the provisions herein would be impracticable or unnecessary.* Provided, that any employé who while engaged in the performance of his duty is required or permitted to ride on the top or side of a car in putting the car or cars into or taking them out of any such building, may be injured or killed by reason of any structure or obstruction or any part or portion of said building having been placed or built in closer proximity to the tracks upon which said cars are being moved, than eight feet from the center of said tracks or twenty-one feet from the tops of the rails thereof, shall not be deemed to have assumed the risk thereby occasioned or to have been

guilty of contributory negligence, although such employé continued in the employ of the person, firm or corporation using said tracks, after the location of such obstruction or portion of said building shall have been brought to his knowledge and the exercise of permission from the Railroad and Warehouse Commission as provided for herein, shall be at the sole risk of the employer and owner of said building.

"Sec. 4. *Employés Not Required to Work in Rain, Heat, Cold or Snow.*— Where any such buildings are maintained, it shall be unlawful for any employer to require men so employed to work outside of such buildings in rain, heat, cold, snow, or other inclement weather.

"Sec. 5. *Violation a Misdemeanor.*—Any person, firm, copartnership, corporation, or receiver thereof, violating any of the provisions of this act, shall be guilty of a misdemeanor, and upon conviction thereof, shall be liable for a penalty of not less than one hundred dollars ($100.00), nor more than five hundred dollars ($500.00), for each offense, and the failure to provide a building or buildings as hereinbefore required, shall constitute a separate offense for every day or part of the day while such failure continues, and such penalty shall be recovered in a suit brought in the name of the state of Minnesota, in any court having jurisdiction thereof, by the attorney general of the state, or at his direction. All fines and penalties recovered by the state under this act shall be paid into the treasury of the state of Minnesota.

"Sec. 6. *Effective September 1, 1920.*—This act shall take effect and be in force on and after September 1, 1920.

"Approved April 25, 1919."

[1] At the outset it is contended by the defendants that the court has no jurisdiction of the suit, inasmuch as equity will not undertake to enjoin the enforcement of a criminal statute, and, further, that the plaintiff has an adequate remedy at law. These contentions cannot be sustained. Though a court of equity has in general no power to enjoin criminal proceedings or to prohibit the enforcement of an unconstitutional criminal law (In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402; Davis & Farnum Co. v. Los Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47 L. Ed. 778), yet where property rights are involved, and are threatened with destruction by criminal proceedings under an alleged unconstitutional law, a court of equity may afford relief by injunction. Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169; Oklahoma Operating Co. v. Love, 252 U. S. 331, 40 Sup. Ct. 338, 64 L. Ed. 596; Wilson v. New, 243 U. S. 332, 37 Sup. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024; Hammer v. Dagenhart, 247 U. S. 251, 38 Sup. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724; Mo. Pac. Ry. Co. v. Omaha, 235 U. S. 121, 35 Sup. Ct. 82, 59 L. Ed. 157; Rast v. Van Deman, 240 U. S. 342, 36 Sup. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; Truax v. Raich, 239 U. S. 33, 36 Sup. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Allen v. Omaha Co. (C. C. A.) 275 Fed. 1.

[2] In support of the contention that the plaintiff has a plain adequate remedy at law, the defendants point out that it was perfectly possible for the plaintiff to await an order made by the Commission pursuant to the statute in question, and then take an appeal, as provided by the statutes of the state, to the state district court, and, if necessary, to the Supreme Court of the state, and thereafter to the Supreme Court of the United States. Doubtless this course of procedure might be pur-

sued, but the remedy is not of such character as to preclude a suit in equity in the federal court. The adequate remedy at law contemplated by section 267, Judicial Code (R. S. § 723 [Comp. St. § 1244]), must be one which is as prompt and efficient as the equitable remedy. Walla Walla v. Walla Walla Co., 172 U. S. 1, 12, 19 Sup. Ct. 77, 43 L. Ed. 341; Magruder v. Belle Fourche Ass'n, 219 Fed. 72, 135 C. C. A. 524.

The remedy must be one that plaintiff may resort to of his own volition, and not at the will of the defendant. Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819; Bank v. Stone (C. C.) 88 Fed. 398; Fredenberg v. Whitney (D. C.) 240 Fed. 819; Wheeler v. Bedford, 54 Conn. 244, 7 Atl. 22. It must be a legal remedy in the federal court, and not merely in the state court. Nat. Surety Co. v. State Bank, 120 Fed. 593, 56 C. C. A. 657, 61 L. R. A. 394; Brun v. Mann, 151 Fed. 145, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154; Franklin v. Nevada Co. (C. C. A.) 264 Fed. 643; St. Louis, etc., Ry. Co. v. M'Elvain (D. C.) 253 Fed. 123. The legal remedy suggested in the case at bar does not fulfill these requisites, and therefore does not prevent the maintenance of a suit in equity.

Turning to the merits: The statute in question on its face purports to provide for the health, safety, and comfort of certain classes of employés. Its justification, therefore, must be found in the police power of the state. Violations of the statute are made misdemeanors, and penalties are provided for such violations. It is therefore a criminal statute, and must fulfill the usual requirements of such statutes.

Plaintiff contends that the statute is violative of the Fourteenth Amendment to the Constitution, and in conflict with the acts of Congress known as the Interstate Commerce Act (Comp. St. § 8563 et seq.), the Safety Appliance Acts (Comp. St. § 8605 et seq.), and the Transportation Act of 1920 (41 Stat. 456). Plaintiff further contends that the statute is not a legal exercise of the police power; that the statute is void, in that it attempts to delegate legislative powers to the Railroad and Warehouse Commission; and that the statute does not fulfill the requisites of a valid criminal statute.

1. *The Statute as a Police Measure.* The tests for determining whether a statute falls within or without the police power are perhaps not capable of exact and comprehensive statement. In the case of Sligh v. Kirkwood, 237 U. S. 52, 35 Sup. Ct. 501, 59 L. Ed. 835, the court said (237 U. S. at page 58, 35 Sup. Ct. 502, 59 L. Ed. 835):

"The limitations upon the police power are hard to define, and its far-reaching scope has been recognized in many decisions of this court. At an early day it was held to embrace every law or statute which concerns the whole or any part of the people, whether it related to their rights or duties, whether it respected them as men or citizens of the state, whether in their public or private relations, whether it related to the rights of persons or property of the public or any individual within the state. New York v. Miln, 11 Pet. 102, 139. The police power, in its broadest sense, includes all legislation and almost every function of civil government. Barbier v. Connolly, 113 U. S. 27. It is not subject to definite limitations, but is coextensive with the necessities of the case and the safeguards of public interest. Camfield v. United States, 167 U. S. 518, 524. It embraces regulations designed to promote public convenience or the general prosperity or welfare, as well as those specifically intended to promote the public safety or the public health. Chica-

go, etc., Railway v. Drainage Commissioners, 200 U. S. 561, 592. In one of the latest utterances of this court upon the subject, it was said: 'Whether it is a valid exercise of the police power is a question in the case, and that power we have defined, as far as it is capable of being defined by general words, a number of times. It is not susceptible of circumstantial precision. It extends, we have said, not only to regulations which promote the public health, morals, and safety, but to those which promote the public convenience or the general prosperity. * * * And further, "It is the most essential of powers, at times the most insistent and always one of the least limitable of the powers of government." ' Eubank v. Richmond, 226 U. S. 137, 142."

[3] Whether the statute under discussion is a valid exercise of the police power can perhaps be best determined by considering the objections urged against it. It is claimed that the statute in certain of its provisions is purely arbitrary, and therefore not a proper exercise of the police power. The statute, as will be noted, requires sheds to be built at all points where 6 or more men are employed at one time for a period of not less than 30 days on the work of constructing, repairing, etc., cars, car trucks, and other equipment.

It is contended that there is no relation between six men working for 30 days and the public health and welfare. This method of classification of points where sheds are required and points where they are not required may at first appear fanciful; but it is evident that some classification had to be made. It is suggested that only repair points used in the winter time should have been included. But the Legislature evidently concluded that inclement weather conditions for workmen were not confined to the winter season. The evidence shows that there are four repair points on plaintiff's railroad lines in Minnesota which come within the provisions of the statute, and several other points where repairs are made which do not come within the provisions. It was evidently the purpose of the Legislature to include the more important repair points and to exclude the others, and, while the method of classification employed may not be logically perfect, it is at least practicable, and one which has not infrequently been adopted. See McLean v. Arkansas, 211 U. S. 539, 551, 29 Sup. Ct. 206, 53 L. Ed. 315; St. Louis Consol. Coal Co. v. Illinois, 185 U. S. 203, 207, 22 Sup. Ct. 616, 46 L. Ed. 872.

[4] It is claimed by the plaintiff that the law is invalid, in that it arbitrarily interferes with the management by the railroad company of its own property. In support of this contention plaintiff cites Lake Shore Ry. Co. v. Smith, 173 U. S. 684, 19 Sup. Ct. 565, 43 L. Ed. 858; C., M. & St. P. Ry. Co. v. Wisconsin, 238 U. S. 491, 35 Sup. Ct. 869, 59 L. Ed. 1423, L. R. A. 1916A, 1133. The former was "the family mileage book case," and the latter "the upper berth case." When these cases are compared, however, with the cases of Holden v. Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780, C., B. & Q. v. McGuire, 219 U. S. 549, 31 Sup. Ct. 259, 55 L. Ed. 328, Erie R. R. v. Williams, 233 U. S. 685, 34 Sup. Ct. 761, 58 L. Ed. 1155, 51 L. R. A. (N. S.) 1097, Booth v. Indiana, 237 U. S. 391, 35 Sup. Ct. 617, 59 L. Ed. 1011, and the many cases therein reviewed, in which the police power was upheld, the cases being not dissimilar in principle to the case at bar, it becomes apparent that the latter class of cases is controlling here.

[5] It is further claimed that the law is void on account of the numerous and minute specifications in section 3 thereof, which arbitrarily interfere with the management by the company of its own property. The case of Bonnett v. Vallier, 136 Wis. 193, 116 N. W. 885, 17 L. R. A. (N. S.) 486, 128 Am. St. Rep. 1061, is cited. This was the Wisconsin tenement house case. The provision in section 3 of the present statute as amended giving the commission power to allow deviations from the specifications largely takes away the force of this contention. But it is claimed that this provision is subject to the arbitrary whim of the Railroad and Warehouse Commission. In cases of this kind, however, it will be assumed that the public commission will act fairly and with reason, and not arbitrarily. Hall v. Geiger-Jones Co., 242 U. S. 539, 37 Sup. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643; Merrick v. Halsey & Co., 242 U. S. 568, 37 Sup. Ct. 227, 61 L. Ed. 498. In the latter case the court said (242 U. S. page 590, 37 Sup. Ct. 232, 61 L. Ed. 498):

"The contentions based on the exemption and provision are a part of that which accuses the law of conferring arbitrary discretion upon the commission. * * * The accusation is formidable in words but it is the same that has been made many times. It is answered by the comment and the cases cited in the opinion in the other cases. Besides, we repeat, there is a presumption against wanton action by the commission, and if there should be such disregard of duty a remedy in the courts is explicitly given, and if it were not given it would necessarily be implied."

[6] It is further contended by the plaintiff that the law is invalid, because it burdens and interferes with interstate commerce. Doubtless this is true to some extent, but the burden and interference are indirect and incidental only, and in this class of cases such results are not sufficient to invalidate the law. Sligh v. Kirkwood, 237 U. S. 52, 61, 35 Sup. Ct. 501, 59 L. Ed. 835; Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. 715, 56 L. Ed. 1182; Hall v. Geiger-Jones Co., 242 U. S. 537, 538, 37 Sup. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643; Erie Railroad v. Williams, 233 U. S. 685, 704, 34 Sup. Ct. 761, 58 L. Ed. 1155, 51 L. R. A. (N. S.) 1097; N. Y., New Haven & Hartford R. R. v. N. Y., 165 U. S. 628, 17 Sup. Ct. 418, 41 L. Ed. 853; Atlantic Coast Line v. Georgia, 234 U. S. 280, 34 Sup. Ct. 829, 58 L. Ed. 1312; Lake Shore R. R. v. Ohio, 173 U. S. 285, 19 Sup. Ct. 465, 43 L. Ed. 702; C., R. I. & P. Ry. v. Arkansas, 219 U. S. 453, 31 Sup. Ct. 275, 55 L. Ed. 290.

[7] The law is further claimed to be arbitrary and invalid, because it includes only certain employés, viz. those who construct and repair cars, trucks, and other equipment, leaving other employés of the plaintiff, such as those who build tanks, shops, and other structures, to suffer inclemency of the weather. It is sufficient as to this contention to quote what was said in Erie R. R. Co. v. Williams, 233 U. S. 685, at page 705, 34 Sup. Ct. 761, 767 (58 L. Ed. 1155, 51 L. R. A. [N. S.] 1097):

"Considerable argument is made to support the contention, in which a comparison is made between the employés, mechanics, workmen and laborers, to whom the law applies, and the other employés of the company, and it is de-

clared that all, if any, suffer from monthly payments and all are entitled, therefore, to receive the benefit of semimonthly payments. But, as we have said, employés are not complaining, and whatever rights those excluded may have, plaintiff can not invoke."

Furthermore, in this connection, the element of practicability of including other classes of employés must not be overlooked. Louisville & Nashville R. R. Co. v. Molton, 218 U. S. 36, 30 Sup. Ct. 676, 54 L. Ed. 921, 47 L. R. A. (N. S.) 84; St. Louis, Iron Mountain, etc., R. R. Co. v. State, 86 Ark. 518, 112 S. W. 150.

[8] The claim is also made that the statute is invalid because the classification of the employers to which it applies is purely arbitrary. It is pointed out that the law does not make the relation of employer and employé the basis, nor the fact that certain occupations are dangerous and unhealthy, but that the basis is found solely in the character of the articles made or repaired. The answer to this contention is found in such cases as Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923, and Soon Hing v. Crowley, 113 U. S. 703, 5 Sup. Ct. 730, 28 L. Ed. 1145. In the latter case the court said (113 U. S. 708, 5 Sup. Ct. 731, 28 L. Ed. 1145):

"The specific regulations for one kind of business, which may be necessary for the protection of the public, can never be the just ground of complaint because like restrictions are not imposed upon other business of a different kind. The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws."

See Booth v. Indiana, 237 U. S. 391, 35 Sup. Ct. 617, 59 L. Ed. 1011; McLean v. Arkansas, 211 U. S. 539, 29 Sup. Ct. 206, 53 L. Ed. 315; Louisville & N. R. R. v. Melton, 218 U. S. 36, 55, 30 Sup. Ct. 676, 54 L. Ed. 921, 47 L. R. A. (N. S.) 84. In the latter case the court said, quoting from Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 294, 18 Sup. Ct. 594, 42 L. Ed. 1037:

"There is therefore no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities, and necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things."

[9] Cost and inconvenience caused to the plaintiff by the statute are also strenuously urged against it. But in the case of Erie R. R. v. Williams, 233 U. S. 685, 700, 34 Sup. Ct. 761, 764 (58 L. Ed. 1155, 51 L. R. A. [N. S.] 1097), the court said:

"It is hardly necessary to say that cost and inconvenience (different words, probably, for the same thing) would have to be very great before they could become an element in the consideration of the right of a state to exert its reserved power or its police power."

See, also, Atlantic Coast Line v. Goldsboro, 232 U. S. 548, 34 Sup. Ct. 364, 58 L. Ed. 721; G. N. Ry. v. Clara City, 246 U. S. 434, 38 Sup. Ct. 346, 62 L. Ed. 817.

[10] The penalty provisions of the statute are also urged as rendering it unconstitutional. But, before the penalty provisions can come into effect, an order of the commission is necessary, under the statute, and this order is subject to judicial review under Gen. St. 1913, § 4191, as amended by chapter 291, Session Laws Minn. 1917 (Gen. St. Supp. 1917, § 4191), and by sections 4192 and 4200, General Statutes Minn. 1913. One of the main tests to determine whether penalty provisions render a statute void, as being in contravention of due process, is the presence or absence of provisions for judicial review before the penalties can attach. Wadley v. Georgia, 235 U. S. 651, 35 Sup. Ct. 214, 59 L. Ed. 405, Oklahoma Operating Co. v. Love, 252 U. S. 331, 40 Sup. Ct. 338, 64 L. Ed. 596; Ohio Valley Co. v. Ben Avon Borough, 253 U. S. 287, 40 Sup. Ct. 527, 64 L. Ed. 908; St. L., etc., Ry. Co. v. Williams, 251 U. S. 63, 65, 40 Sup. Ct. 71, 64 L. Ed. 139; Allen v. Omaha Co. (C. C. A.) 275 Fed. 1. See, also, Western Union v. Richmond, 224 U. S. 160, 32 Sup. Ct. 449, 56 L. Ed. 710.

[11] It is further contended by plaintiff that the statute is inoperative and void, as attempting to cover a field already occupied by federal statutes, viz.: First, the statute known as the Transportation Act of 1920 (41 Stat. 456, c. 91), and especially those provisions thereof establishing the "Labor Board" (sections 300–316); second, the federal statutes known as the "Safety Appliance Acts," and especially section 4 of the act of April 14, 1910 (36 Stat. 298, c. 160 [Comp. St. § 8621]). While the scope of the jurisdiction of the Labor Board is not yet definitely determined, yet in my judgment it is confined to disputes arising between carriers and their employés. See section 307a of the act. The instant case is not such a dispute.

[12, 13] The section of the Safety Appliance Act above cited requires that defective cars upon the lines of carriers subject to the act be repaired at the place where they are first discovered to be defective, if feasible; otherwise, at the nearest available repair point. The provisions of the statute involved in the case at bar are in my judgment in conflict with this requirement of the federal act. The federal statute is, of course, paramount, and the provisions of the state statute in so far as they conflict with the federal statute are inoperative and void. Penn. R. R. Co. v. Pub. Ser. Com., 250 U. S. 566, 40 Sup. Ct. 36, 63 L. Ed. 1142. But, though this may limit the scope of the state statute, it does not render it wholly void; the statute still has a field of operations.

[14] The prohibition of paint-spraying machines within the proposed sheds is claimed to be unreasonable, purely arbitrary, and not a valid exercise of the police power of the state. The evidence shows that at one time the use of such machines was thought to be deleterious to health, on account of certain ingredients contained in the paint. But the evidence further shows that these ingredients are not found in the paint used at present, and furthermore the evidence shows that the state itself makes use, upon its own work, of these same paint-spraying machines inside buildings Under these circumstances I am of opinion that the prohibition of the use of such machines is not a valid exercise of the police power.

[15] 2. It is also claimed by plaintiff that the statute is void by reason of the attempted delegation of legislative power to the Railroad and Warehouse Commission contained in section 3 of the act. This contention is in my judgment fully met and disposed of by the cases of Red "C" Oil Co. v. North Carolina, 222 U. S. 380, 394, 32 Sup. Ct. 152, 56 L. Ed. 240; Merrick v. Halsey & Co., 242 U. S. 568, 37 Sup. Ct. 227, 61 L. Ed. 498; Brazee v. Michigan,·241 U. S. 340, 36 Sup. Ct. 561, 60 L. Ed. 1034, Ann. Cas. 1917C, 522; U. S. v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563.

[16] 3. It remains to consider the contention of the plaintiff that the statute is void for indefiniteness and uncertainty. The attack is upon sections 1 and 4. The portion of section 1 to which attention is challenged reads as follows:

"The building or buildings to cover a sufficient portion of the repairing or construction company's yards or tracks, so that all employés engaged in such work shall be protected from heat, rain, cold, snow, or other inclement weather, while working at such work."

Section 4 reads as follows:

"Where any such buildings are maintained, it shall be unlawful for any employer to require men so employed to work outside of such buildings in rain, heat, cold, snow, or other inclement weather."

The alleged uncertainty rests in the words "rain, heat, cold, snow or other inclement weather." It is to be borne in mind that we are dealing with a criminal statute, violation of which constitutes a misdemeanor, punishable by a fine of from $100 to $500. In U. S. v. Brewer, 139 U. S. 278, 11 Sup. Ct. 538, 35 L. Ed. 190, the court, in passing upon the construction to be given certain criminal statutes relating to elections, said (139 U. S. 288, 11 Sup. Ct. 541, 35 L. Ed. 190):

"Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid."

In Tozer v. U. S. (C. C.) 52 Fed. 917, Circuit Justice Brewer, in passing upon a criminal statute, said:

"But, in order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty."

This case was cited with approval in U. S. v. Cohen Grocery Co., 255 U. S. 81, 41 Sup. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045. The court, in passing upon section 4 of the Food Control Act of August 10, 1917, as amended October 22, 1919 (41 Stat. 298), said (255 U. S. page 89, 41 Sup. Ct. 300, 65 L. Ed. 516, 14 A. L. R. 1045):

"The sole remaining inquiry, therefore, is the certainty or uncertainty of the text in question; that is, whether the words 'that it is hereby made unlawful for any person willfully * * * to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries,' constituted a fixing by Congress of an ascertainable standard of guilt and are adequate to inform persons accused of violation thereof of the nature and cause of the accusation against them. That they are not, we are of opinion, so clearly results from their mere statement as to render elaboration on the

subject wholly unnecessary. Observe that the section forbids no specific or definite act. It confines the subject-matter of the investigation which it authorizes to no element essentially inhering in the transaction as to which it provides. It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can forshadow or adequately guard against. In fact, we see no reason to doubt the soundness of the observation of the court below, in its opinion, to the effect that, to attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury. * * * That it results from the consideration which we have stated that the section before us was void for repugnancy to the Constitution is not open to question."

Applying these principles to the case at bar, the questions at once arise: What is the standard of guilt? When is it fixed, and by whom? The words "rain and snow" are hardly definite enough in a criminal statute. The words "heat and cold" are so elastic in their meaning as to cover the whole range of temperature. The words "inclement weather" are equally indefinite. What is meant by "inclement weather"? Will a fog or mist come within the language? Will wind be included? It is surely necessary that limitations shall be placed upon all of these terms. But who is to supply the limitations, the employer or the employé? or the court? or the jury? The Legislature is the only proper authority to define a statutory crime against the state. This power cannot be delegated to individuals, courts, or juries. The uncertainty and indefiniteness in the present statute is in my judgment as great as was found to exist in the statutes considered in the cases above cited. See, also, International Harvester Co. v. Kentucky, 234 U. S. 216, 34 Sup. Ct. 853, 58 L. Ed. 1284; Collins v. Kentucky, 234 U. S. 634, 34 Sup. Ct. 924, 58 L. Ed. 1510; U. S. v. Penna. R. R. Co., 242 U. S. 208, 37 Sup. Ct. 95, 61 L. Ed. 251. The cases of Nash v. U. S., 229 U. S. 373, 33 Sup. Ct. 780, 57 L. Ed. 1232, Miller v. Strahl, 239 U. S. 426, 36 Sup. Ct. 147, 60 L. Ed. 364, and other similar cases which are cited as holding contrary views, were considered in the Cohen Grocery Co. Case, and the court in distinguishing these cases said:

"The cases relied upon all rested upon the conclusion that, for reasons found to result either from the text of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded."

No such standard can in my judgment be found in the statute now under consideration.

[17] It is contended by the defendants that, even if section 4 and the part of section 1 above referred to are so indefinite and uncertain as to be void, yet that this should not invalidate the whole statute. The tests to determine whether an invalid part of a statute may be separated from the remainder are stated in Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 962, 29 L. Ed. 185, where the court (114 U. S. at page 304, 5 Sup. Ct. 903, 962, 922, 29 L. Ed. 185) used the following language:

"It is undoubtedly true that there may be cases where one part of a statute may be enforced as constitutional, and another be declared inoperative and void, because unconstitutional; but these are cases where the parts are so distinctly separable that each can stand alone, and where the court is able to

see, and to declare, that the intention of the Legislature was that the part pronounced valid should be enforceable, even though the other part should fail. To hold otherwise would be to substitute for the law intended by the Legislature one they may never have been willing by itself to enact."

In El Paso, etc., Ry. Co. v. Gutierrez, 215 U. S. 87, 97 (30 Sup. Ct. 21, 25, 54 L. Ed. 106), the court in its decision used the following language:

"It remains to inquire whether it is plain that Congress would have enacted the legislation had the act been limited to the regulation of the liability to employees engaged in commerce within the District of Columbia and the territories. If we are satisfied that it would not, or that the matter is in such doubt that we are unable to say what Congress would have done omitting the unconstitutional feature, then the statute must fall."

See, also, Ill. Central R. R. Co. v. McKendree, 203 U. S. 514, 27 Sup. Ct. 153, 51 L. Ed. 298; Employers' Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297; Butts v. Merchants' Transportation Co., 230 U. S. 126, 33 Sup. Ct. 964, 57 L. Ed. 1422.

[18] In the case at bar it is not possible, in my judgment, under the tests above given, to separate section 4 and that portion of section 1 above referred to from the remainder of the statute. These portions of the statute are vital. They embody the real ground and purpose of the passage of the statute. It is extremely improbable, in my judgment, that the Legislature would have passed the statute with these portions eliminated. Under these circumstances, the whole statute must fall.

A decree may be prepared by counsel for plaintiff in accordance with this decision, directing that a permanent injunction issue against the defendants, restraining and enjoining them from in any manner enforcing or attempting to enforce the statute in question. The decree should be submitted to counsel for defendants as to form before being presented for signature.