# BUTTS *v.* MERCHANTS & MINERS TRANSPORTATION CO.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
THE DISTRICT OF MASSACHUSETTS.

No. 131.   Argued January 21, 1913.—Decided June 16, 1913.

Where the greater part of a statute is unconstitutional as beyond the power of Congress, the question for the court to determine as to the part which is constitutional is whether it was the intent of Congress to have that part stand by itself—if not, the whole statute falls.

This court holds that it was the evident intent of Congress in enacting the Civil Rights Act to provide for its uniform operation in all places in the States as well as the Territories within the jurisdiction of the United States, and that it was not the intent of Congress that the provisions of the statute should be applicable only to such places

as are under the exclusive jurisdiction of the National Government.
The provisions of the Civil Rights Act having been declared uncon-
stitutional as to their operation within the States, *Civil Rights Cases,*
. 109 U. S. 3, they are not separable as to their operation in such places
as are under the exclusive jurisdiction of the National Government
and the statute is therefore unconstitutional in its entirety.  *The
Trade Mark Cases,* 100 U. S. 82.
The enforcement of a remedial statute, such as the Employers' Liability
Act, in Territories of the United States, although unconstitutional as
to the States, is distinguishable from the similar enforcement of a
highly penal statute such as the Civil Rights Act.  *El Paso &c. Rail-
way Co.* v. *Gutierrez,* 215 U. S. 87, distinguished.

THE facts, which involve the constitutionality of §§ 1
and 2 of the Civil Rights Act of March 1, 1875, as applied
to vessels of the United States engaged in the coastwise
trade, are stated in the opinion.

*Mr. Albin L. Richards* for plaintiff in error:

Congress has two kinds of jurisdiction, that dependent
upon locality and that dependent upon subject-matter.
The first includes jurisdiction over vessels of the United
States upon the high seas and the navigable waters of
the United States.

The admiralty and maritime jurisdiction of Congress is
not dependent solely upon the power of regulating com-
merce, *United States* v. *Burlington & Henderson Ferry,* 21
Fed. Rep. 331, 341, but also on the grant extending the
judicial power to all cases of admiralty and maritime
jurisdiction in Art. III, § 2 of the Constitution.  *The
Hamilton,* 207 U. S. 398.

Fixing the limits of admiralty and maritime jurisdiction
is simply establishing a physical boundary.  See *Gibbons*
v. *Ogden,* 9 Wheat. 1; *Waring* v. *Clarke,* 5 How. 441, 465;
*The Genesee Chief,* 12 How. 443; *Gilman* v. *Philadelphia,*
3 Wall. 724; *The Belfast,* 7 Wall. 624; *The Daniel Ball,* 10
Wall. 557; *Ex parte Easton,* 95 U. S. 68; *In re Garnett,*
141 U. S. 1; *The Robert W. Parsons,* 191 U. S. 17.

For the distinction between acts regulating interstate commerce upon land and the jurisdiction of Congress over navigable waters, see *The Daniel Ball*, 10 Wall. 557, 565; *Ex parte Easton*, 95 U. S. 68, 72; *The Robert W. Parsons*, 191 U. S. 17.

The sovereignty of Congress over United States vessels upon the high seas is in nowise impaired by the fact that within that jurisdiction for some purposes, the laws of the individual States are given effect. *The Hamilton*, 207 U. S. 398, distinguished. See article by George Whitelock, 22 Harv. Law Rev., pp. 403, 413.

That admiralty does not recognize any right of a State or sovereignty to legislate for the vessels of its citizens as if they were its own territory is shown by the *Bourgogne Case*, 210 U. S. 95, 115. See also *United States v. Davis*, 2 Sumner, 482; *The Queen v. Keyn*, L. R. 2 Ex. Div. 63, 66, 98, 101, 107, 148, 149, 150, 158, 232, 238.

The established principle that the law of the United States will govern in civil cases of collision upon the high seas between vessels of different foreign nationalities shows that the admiralty jurisdiction is not subject to the law of the State of the owner of the vessel.

The above distinction is important in determining whether to give to an unconstitutional statute a partial enforcement, based upon the first or second kind of jurisdiction.

While there must always be a doubt as to whether Congress in passing a law in terms applicable to the entire country, but held to be unconstitutional except so far as applicable to interstate commerce, desired to give rise to the difficulty and confusion which might result within the States from the partial application of the statute, these objections do not exist in the case of a partial application based upon locality; that is to say, giving the statute effect in the District of Columbia, in the Territories and

upon the high seas and navigable waters of the United States, but not elsewhere.  See act to more effectually provide for the punishment of crimes, of March 3, 1825, and comments of Mr. Justice Story cited in *United States* v. *Press Publishing Co.*, 219 U. S. 1, 12.  And see also Benedict, Admiralty, 4th ed, § 599; *United States* v. *Wilson*, 3 Blatchf. 435.

The application of the statute to enrolled vessels of the United States upon the high seas, to the District of Columbia and the Territories is separable from the other applications of the statute.

*El Paso & N. E. Ry. Co.* v. *Gutierrez*, 215 U. S. 87, holding provisions of Employers' Liability Act separable as to Federal jurisdiction, decided substantially the question which was left open by this court in the *Civil Rights Cases* upon which the defendant in error relies to prevent the enforcement of this law.  *Civil Rights Cases*, 109 U. S. 3, 19, 25.

The application of this statute to those places within the plenary jurisdiction of Congress is in accordance with the intention of Congress.

The Civil Rights Act was a statute passed with the benevolent purpose of alleviating the condition of the recently enfranchised slaves.  It was a law for the personal benefit and protection of individuals, an attempt to lift them up as far as possible to the plane of other citizens. It was a law of personal rights and the failure of such a law to extend throughout the Union, while regrettable, would give no reason for not having such a law in force wherever Congress could legally enact it.

Congress intended the Civil Rights Act to have a partial application so far as it was constitutional.  See *Ex parte Virginia*, 100 U. S. 339, in which the fourth section of the statute was permitted to be enforced in a criminal case.

*Mr. A. Nathan Williams* for defendant in error.

Mr. Justice Van Devanter delivered the opinion of the court.

This is an action to recover twelve penalties of $500 each under §§ 1 and 2 of the act of March 1, 1875, 18 Stat. 335, c. 114, known as the Civil Rights Act. According to the declaration the facts are these: The plaintiff is a colored woman and a citizen of the United States, and the defendant is a Maryland corporation engaged in the transportation of passengers and freight by vessels plying between Boston, Massachusetts, and Norfolk, Virginia. Upon tickets purchased for the purpose and entitling her to the accommodations and privileges of a first class passenger, the plaintiff was carried by the defendant on one of its steamships from Boston to Norfolk and on another back to Boston. Both vessels were engaged in the coastwise trade as public conveyances, and were duly enrolled under the laws of the United States. During both voyages the plaintiff was denied, because of her color, the full and equal enjoyment of the accommodations and privileges of a first class passenger, the denials consisting in requiring her to take her meals at a second table, instead of at the first with the white passengers having tickets like her own, and in giving her a stateroom on the lower deck, instead of on the upper one where the white passengers possessing like tickets were given rooms. The acts of discrimination were twelve in number. Eleven were charged as occurring upon the high seas more than a marine league from any land, and the other as occurring merely upon the high seas. There was no attempt to set up a common law right of recovery, the sole reliance being upon §§ 1 and 2 of the act of 1875, *supra*. The defendant demurred, claiming that those sections are unconstitutional and void, and the demurrer was sustained, judgment being given for the defendant. The plaintiff then sued out this direct writ of error.

The preamble of the act and the sections under which the penalties are claimed are as follows:

"Whereas, it is essential to just government we recognize the equality of all men before the law, and hold that it is the duty of government in its dealings with the people to mete out equal and exact justice to all, of whatever nativity, race, color, or persuasion, religious or political; and it being the appropriate object of legislation to enact great fundamental principles into law: Therefore,

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That all persons within the jurisdiction of the United States shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities, and privileges of inns, public conveyances on land or water, theatres, and other places of public amusement; subject only to the conditions and limitations established by law, and applicable alike to citizens of every race and color, regardless of any previous condition of servitude.

"SEC. 2. That any person who shall violate the foregoing section by denying to any citizen, except for reasons by law applicable to citizens of every race and color, and regardless of any previous condition of servitude, the full enjoyment of any of the accommodations, advantages, facilities, or privileges in said section enumerated, or by aiding or inciting such denial, shall, for every such offence, forfeit and pay the sum of five hundred dollars to the person aggrieved thereby, to be recovered in an action of debt, with full costs; and shall also, for every such offence, be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than five hundred nor more than one thousand dollars, or shall be imprisoned not less than thirty days nor more than one year: *Provided,* That all persons may elect to sue for the penalty aforesaid or to proceed under their rights at common law and by state statutes; and having so elected to pro-

ceed in the one mode or the other, their right to proceed in the other jurisdiction shall be barred. But this proviso shall not apply to criminal proceedings, either under this act or the criminal law of any State: *And provided further*, That a judgment for the penalty in favor of the party aggrieved, or a judgment upon an indictment, shall be a bar to either prosecution respectively."

The question of the constitutional validity of those sections came before this court in *Civil Rights Cases*, 109 U. S. 3, and upon full consideration it was held (a) that they receive no support from the power of Congress to regulate interstate commerce because, as is shown by the preamble and by their terms, they were not enacted in the exertion of that power, and (b) that as applied to the States they are unconstitutional and void because in excess of the power conferred upon Congress and an encroachment upon the powers reserved to the States respectively. That decision has stood unchallenged for almost thirty years and counsel for the plaintiff does not question it now. But he does contend that, although unconstitutional and void in their application to the States, the sections are valid and effective in all other places within the jurisdiction of the United States, such as upon an American vessel upon the high seas, more than a marine league from land, and in the District of Columbia and the Territories. And in this connection our attention is directed to that part of the opinion in *Civil Rights Cases* which says (p. 19):

"We have also discussed the validity of the law in reference to cases arising in the States only; and not in reference to cases arising in the Territories or the District of Columbia, which are subject to the plenary legislation of Congress in every branch of municipal regulation. Whether the law would be a valid one as applied to the Territories and the District is not a question for consider-

ation in the cases before us; they all being cases arising within the limits of States."

The real question is, whether the sections in question, being in part—by far the greater part—in excess of the power of Congress, are invalid in their entirety. Their words, as also those of the preamble, show that Congress proceeded upon the assumption that it could legislate, and was legislating, in respect of all persons and all places "within the jurisdiction of the United States." It recognized no occasion for any exception and made none. Its manifest purpose was to enact a law which would have an uniform operation wherever the jurisdiction of the United States extended. But the assumption was erroneous, and for that reason the purpose failed. Only by reason of the general words indicative of the intended uniformity can it be said that there was a purpose to embrace American vessels upon the high seas, the District of Columbia and the Territories. But how can the manifest purpose to establish an uniform law for the entire jurisdiction of the United States be converted into a purpose to create a law for only a small fraction of that jurisdiction? How can the use of general terms denoting an intention to enact a law which should be applicable alike in all places within that jurisdiction be said to indicate a purpose to make a law which should be applicable to a minor part of that jurisdiction and inapplicable to the major part? Besides, it is not to be forgotten that the intended law is both penal and criminal. Every act of discrimination within its terms is made an offense and misdemeanor, and for every such offense it gives to the aggrieved party a right to a penalty of $500 and subjects the offender to a fine of not less than $500 nor more than $1,000, or to imprisonment for not less than thirty days nor more than one year.

The decision of this court in *United States* v. *Reese,* 92 U. S. 214, is well in point. That was a prosecution

under a congressional enactment punishing election officers
for refusing to any person entitled to do so the right to
cast his vote.  The statute was expressed in general terms
embracing some acts which Congress could condemn and
others which it could not.  As to the latter it was, of course,
invalid, and the claim was made that, as the act charged
was not of the latter class but of the former, the statute
should be sustained as to acts like the one charged, not-
withstanding the general terms were in excess of the power
of Congress.  But the court held otherwise, saying:

(p. 219) "This is a penal statute, and must be construed
strictly; not so strictly, indeed, as to defeat the clear
intention of Congress, but the words employed must be
understood in the sense they were obviously used.  *United
States* v. *Wiltberger*, 5 Wheat. 85.  If, taking the whole
statute together, it is apparent that it was not the in-
tention of Congress thus to limit the operation of the act,
we cannot give it that effect.

(p. 221) "We are, therefore, directly called upon to
decide whether a penal statute enacted by Congress,
with its limited powers, which is in general language
broad enough to cover wrongful acts without as well as
within the constitutional jurisdiction, can be limited by
judicial construction so as to make it operate only on
that which Congress may rightfully prohibit and punish.
For this purpose, we must take these sections of the statute
as they are.  We are not able to reject a part which is
unconstitutional, and retain the remainder, because it
is not possible to separate that which is unconstitutional,
if there be any such, from that which is not.  The pro-
posed effect is not to be attained by striking out or disre-
garding words that are in the section, but by inserting
those that are not now there.  Each of the sections must
stand as a whole, or fall altogether.  The language is plain.
There is no room for construction, unless it be as to the
effect of the Constitution.  The question, then, to be de-

termined, is, whether we can introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only.

"It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. The courts enforce the legislative will when ascertained, if within the constitutional grant of power. Within its legitimate sphere, Congress is supreme, and beyond the control of the courts; but if it steps outside of its constitutional limitations, and attempts that which is beyond its reach, the courts are authorized to, and when called upon in due course of legal proceedings must, annul its encroachments upon the reserved power of the States and the people. To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty."

So here, to give to the sections in question the effect suggested it would be necessary to reject or strike out the general words "within the jurisdiction of the United States," whereby Congress intended to declare and define in what places the sections should be operative, and to insert other and new words restricting their operation to American vessels upon the high seas and to the District of Columbia and the Territories. To do this would be to introduce a limitation where Congress intended none and thereby to make a new penal statute, which, of course, we may not do.

Another decision no less in point is *Trade Mark Cases,* 100 U. S. 82, which related to an act of Congress providing generally for punishing the fraudulent use of registered trade-marks, although the power of Congress in that regard extended only to trade-marks used in commerce

with foreign nations, or among the several States or with the Indian tribes.    In pronouncing the statute invalid in its entirety the court said:

(p. 96) "When, therefore, Congress undertakes to enact a law, which can only be valid as a regulation of commerce, it is reasonable to expect to find on the face of the law, or from its essential nature, that it is a regulation of commerce with foreign nations, or among the several States, or with the Indian tribes.   If not so limited, it is in excess of the power of Congress.

(p. 98) "It has been suggested that if Congress has power to regulate trade-marks used in commerce with foreign nations and among the several States, these statutes shall be held valid in that class of cases, if no further.   To this there are two objections: . . . Secondly, while it may be true that when one part of a statute is valid and constitutional, and another part is unconstitutional and void, the court may enforce the valid part where they are distinctly separable so that each can stand alone, it is not within the judicial province to give to the words used by Congress a narrower meaning than they are manifestly intended to bear in order that crimes may be punished which are not described in language that brings them within the constitutional power of that body.

(p. 99) "If we should, in the case before us, undertake to make by judicial construction a law which Congress did not make, it is quite probable we should do what, if the matter were now before that body, it would be unwilling to do; namely, make a trade-mark law which is only partial in its operation, and which would complicate the rights which parties would hold, in some instances under the act of Congress, and in others under state law.

The two cases from which we have quoted have been often followed and applied.   *United States* v. *Harris*, 106 U. S. 629, 641; *Baldwin* v. *Franks*, 120 U. S. 678, 685;

*James* v. *Bowman*, 190 U. S. 127, 140; *United States* v. *Ju Toy*, 198 U. S. 253, 262; *Illinois Central Railroad Co.* v. *McKendree*, 203 U. S. 514, 529–530; *Karem* v. *United States*, 121 Fed. Rep. 250, 259.

Counsel for the plaintiff cites *El Paso & Northeastern Railway Co.* v. *Gutierrez*, 215 U. S. 87, as an authority for holding the sections in question valid as applied to American vessels upon the high seas and to the District of Columbia and the Territories, notwithstanding their invalidity as applied to the States. The matter involved in that case was whether the provision in the Employers' Liability Act of 1906, 34 Stat. 232, c. 3073, relating to the District of Columbia and the Territories could be sustained, considering that the provision relating to interstate commerce had been adjudged invalid in *Employers' Liability Cases*, 207 U. S. 463. That act was quite unlike the sections now before us in two important particulars: 1. It was not a penal or criminal statute, to be strictly construed, but was a civil and purely remedial one, to be construed liberally. 2. Its applicability to the District of Columbia and the Territories did not depend upon the same words which made it applicable to interstate commerce. On the contrary, it dealt expressly, first, with common carriers "in the District of Columbia, or in any Territory of the United States," and, second, with common carriers "between the several States." The latter provision had been adjudged invalid because too broad in some of its features, and the *Gutierrez Case* involved the other provision. In that case the court, considering the terms of the statute, held that the provision relating to interstate commerce was "entirely separable from" the one relating to the District of Columbia and the Territories, and that Congress manifestly had proceeded "with the intention to regulate the matter in the District and the Territories, irrespective of the interstate commerce feature of the act." With the

invalid and separable provision eliminated, there still remained a complete and operative statute in terms applying to the District of Columbia and the Territories. The differences between that act and the sections now before us are so pronounced and so obvious that the *Gutierrez Case* is not an authority for the plaintiff. On the contrary, it is in entire harmony with the other cases before cited, as is shown throughout the opinion and by the following excerpt (p. 97):

"It remains to inquire whether it is plain that Congress would have enacted the legislation had the act been limited to the regulation of the liability to employés engaged in commerce within the District of Columbia and the Territories. If we are satisfied that it would not, or that the matter is in such doubt that we are unable to say what Congress would have done omitting the unconstitutional feature, then the statute must fall. *Illinois Central R. R. Co.* v. *McKendree,* 203 U. S. 514; *Employers' Liability Cases,* 207 U. S. *supra.*"

Here it is not possible to separate that which is constitutional from that which is not. Both are dependent upon the same general words, "within the jurisdiction of the United States," which alone indicate where the sections are to be operative. Those words, as the context and the preamble show, were purposely used. They express the legislative will and cannot be limited in the manner suggested without altering the purpose with which the two sections were enacted. They must therefore be adjudged altogether invalid. *James* v. *Bowman* and *United States* v. *Ju Toy, supra; Poindexter* v. *Greenhow,* 114 U. S. 270, 305.

*Judgment affirmed.*