**SIGG-FEHR et al. v. WHITE, Treasurer of the United States, et al.**

(Court of Appeals of District of Columbia. Submitted October 5, 1922. Decided January 2, 1923.)

No. 3857.

1. War ☞12—Suit for funds in hands of Alien Property Custodian is not remedy available to enemies.

Under Trading with the Enemy Act Oct. 6, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½j), the remedy given by section 7(c), for the recovery of property seized under the authority of section 7 (a), by suit against the Alien Property Custodian, is not available to enemies or allies of enemies, in view of section 12, providing that after the war any claim of any enemy or ally of enemies shall be settled as Congress shall direct.

2. War ☞12—Sale by Alien Property Custodian to Director General need not be at public auction.

Under Trading with the Enemy Act, § 12, par. 4, as amended March 28, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ff), providing that any property sold thereunder, except any sold to the United States, shall be sold at public sale to the highest bidder, a sale by the Alien Property Custodian to the Director General of Railroads was to a direct agency of the United States, so as to be within the exception.

3. Evidence ☞83(1)—Injunction ☞12—Injunction unnecessary to restrain disposition of proceeds of sale of enemy property; Alien Property Custodian and Treasurer presumed to perform duty.

No injunction is necessary in aid of a suit by citizens of a neutral country to recover from Alien Property Custodian the proceeds of the sale of property seized by him as enemy property, in view of provision of section 9 (a) of the act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), that the money or property must be held by the Custodian or in the Treasury to await the final decree in such suit, since it must be presumed that the Custodian and the Treasurer will perform their statutory duty, and not attempt to put the property beyond the jurisdiction of the court.

4. War ☞12—Funds from resale of enemy property by Director General cannot be reached by neutral claimant.

Where the Alien Property Custodian sold property seized as enemy property to the Director General and retained the proceeds in the Treasury, the funds received by the Director General for a subsequent resale of the property, which were turned into the revolving fund appropriated to meet the expenses of operating the railroads under government control, cannot be reached by a neutral claimant of the property seized, who can recover only the funds received by the Alien Property Custodian.

5. United States ☞125—Sale by Custodian to Director General cannot be questioned.

To permit the claimant of property seized by the Alien Property Custodian to follow it into the hands of the Director General of Railroads and recover the funds received by him from a resale would permit the suit to embrace matters directly involving the rights of the United States, with respect to which it had not consented to be sued.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the Supreme Court of the District of Columbia.

Suit by Jak. Robert Sigg-Fehr and others, a copartnership, against Frank White, individually and as Treasurer of the United States, and others. From an order of the court discharging the rule to show cause why a temporary injunction should not issue, and denying the temporary injunction, plaintiffs appeal, naming defendants White and Davis as appellees. Affirmed.

Lyttleton Fox and Spier Whitaker, both of New York City, for appellants.

Peyton Gordon, Dean Hill Stanley, and A. A. McLaughlin, all of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Appellants, Jak. Robert Sigg-Fehr, Gottfried Rudolph Baumann-Kienast, and Edmund Gams, individually and as a copartnership organized under the laws of the Confederation of Switzerland, filed a bill in equity in the Supreme Court of the District of Columbia seeking an injunction against defendants, Frank White as Treasurer of the United States, and James C. Davis as Director General of Railroads, restraining them from disbursing certain funds in the Treasury of the United States. From an interlocutory order discharging the rule to show cause, the case comes here on special appeal.

It appears that Schmidt'sche Heissdamf-Gesellschaft, a German corporation doing business at Cassel, Germany (hereafter for convenience referred to as the German Corporation), was the record owner of certificate No. 134, representing 13,490 shares of the capital stock of the Locomotive Superheater Company, a Delaware corporation. On October 2, 1914, the Superheater Company, by direction of the German Corporation, canceled certificate No. 134 without surrender thereof, and between this date and February 21, 1916, 6,750 shares were transferred on the books of the Superheater Company to Briesen & Schrenk, a firm of lawyers, in New York. It is conceded, however, that Briesen & Schrenk had no beneficial interest in the stock; they were merely holding it as trustees.

In November, 1916, the German Corporation undertook, by written contract, to sell to the complainants 12,825 shares of the said stock. Under the terms of sale the purchase price was made payable in Swiss funds "six months after the conclusion of peace between the German Empire and those states now at war with it, as well as those who may hereafter enter the World War against it." The contract further provided that:

"Because of the deferring of the duty of payment, the shares of stock sold are not to be delivered to the purchaser for the present, but are transferred to an American firm as trustee until full payment of the purchase price. As long as this trust lasts, the trustee remains as owner of the shares of stock and shall be recorded as such on the books of the American corporation. The trustees shall exercise the right of owner of this stock under the direction of the purchasers."

The purchaser pledged itself not to incumber or sell the stock during the trust. The dividends were to be collected by Leu & Co., a corporation doing business in Zurich, who were required to pay to the purchasers 1 per cent. of the amount of dividends. The remaining 99 per cent. to be "accumulated as security for the rights of the seller."

By a separate contract, complainants appointed Briesen & Schrenk trustees for the 12,825 shares of stock. Under this agreement Briesen & Schrenk were to hold the stock and pay the dividends to a New York bank, which, under a further agreement between the complainants and the German Corporation, was to turn the dividends over to Leu & Co., who were to hold the same in accordance with the original agreement of sale.

October 11, 1918, Briesen & Schrenk reported to the Alien Property Custodian that they were the record holders as trustees under an agreement between complainants and themselves of 12,775 shares of the capital stock of the Locomotive Superheater Company. Upon investigation the Alien Property Custodian discovered that a certificate for 12,825 shares of the Superheater Company stock was on deposit in a London branch of a German bank and stood in the name of the German Corporation; the certificate having been deposited prior to 1914. It was also discovered that the agreed purchase price at which complainants purchased the stock from the German Corporation was $200 per share. Accordingly the Alien Property Custodian determined that the German Corporation was an enemy, within the purview of the Trading with the Enemy Act, and that the 12,825 shares of stock, here involved, were held for the benefit of the German Corporation. He therefore required the shares to be transferred to him as Alien Property Custodian and new certificates to be issued therefor. He also took possession of certain accrued dividends and Liberty Bonds in possession of Briesen & Schrenk, as well as certain accrued dividends still in the possession of the Superheater Company.

The Alien Property Custodian later sold the 12,825 shares of the stock to the Director General of Railroads, acting for and in behalf of the United States, for the sum of $200 per share, or $2,565,000, which sum, together with United States Liberty Bonds of the par value of $489,000 and $36,830.39 paid to the Alien Property Custodian by Briesen & Schrenk, representing accrued dividends on said stock at the date of seizure by the Alien Property Custodian, was deposited with the Treasurer of the United States, and credited to trust No. 2975, and is now so held. About two years later the Director General of Railroads sold the stock to the Superheater Company and received therefor $248 per share, or $3,180,600. The money received from this sale was paid into a "revolving fund" in the Treasury of the United States.

This suit was brought by complainants to recover the sum of $3,180,600, being the proceeds of the sale of the stock by the Director General of Railroads to the Superheater Company, together with the bonds, moneys, and dividends accumulated on said stock, with interest upon all of said sums and upon said bonds, all of which are alleged to

be illegally possessed and retained by the defendant Frank White. A temporary injunction was sought to restrain the defendants, Frank White, Treasurer, James C. Davis, Director General of Railroads, and Thomas W. Miller, Alien Property Custodian,

"from transferring, assigning, delivering, paying out, or in any other way disposing of the said sum of $3,180,600, and said Liberty Bonds, with the interest thereon, together with any additional sum or sums of money received by any of said defendants, or by any predecessor in office of any of said defendants, by way of dividends or otherwise upon the said 12,825 shares of stock, or in any other way in respect thereof."

From the order of the court, discharging the rule to show cause and denying the temporary injunction, the case comes here on special appeal, naming as appellees, Frank White, individually and as Treasurer of the United States, and James C. Davis, individually and as Director General of Railroads.

[1] We think the case, so far as the present inquiry is concerned, turns upon the validity of the sale of the stock by the Alien Property Custodian to the Director General of Railroads. The property was seized by the Custodian under the authority conferred by section 7 (a) of the Act of Congress of October 6, 1917, 40 Stat. 411 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d), known as the Trading with the Enemy Act. It was seized as property which the Custodian believed to belong to an enemy of the United States. In pursuance of the authority vested by the act, he required Briesen & Schrenk and the Locomotive Superheater Company to report the amount of property in their possession belonging to the supposed enemy. Under section 7 (c) of the Act as amended November 4, 1918, 40 Stat. 1020 (Comp. St. Ann. Supp. 1919, § 3115½d), he required the Superheater Company to transfer the stock on its books to him as Alien Property Custodian.

This brings us to the consideration of the relief granted to any person claiming property which has been seized by the Alien Property Custodian. Section 7 (c) provides as follows:

"The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this act, and in the event of sale or other disposition of such property by the Alien Property Custodian, shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the United States."

This relates only to claimants who are not enemies or allies of enemies, since section 12, among other things, provides:

"After the end of the war any claim of any enemy or of an ally of enemy to any money or other property received and held by the Alien Property Custodian or deposited in the United States Treasury, shall be settled as Congress shall direct."

This, except in certain cases, not important here, deferred the right of recovery by an enemy or ally of enemy, to await the future action of Congress. The validity of that portion of the act which places a

limitation upon the right of recovery has not been raised, and therefore will not be considered.

[2] By paragraph 4 of section 12 of the act, as amended March 28, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ff), the Alien Property Custodian is vested with all the powers of a common-law trustee, with—

"power to manage such property and do any act or things in respect thereof or make any disposition thereof or of any part thereof, by sale or otherwise, and exercise any rights or powers which may be or become appurtenant thereto or to the ownership thereof in like manner as though he were the absolute owner thereof: Provided, that any property sold under this act, except when sold to the United States, shall be sold only to American citizens, at public sale to the highest bidder, after public advertisement of time and place of sale which shall be where the property or a major portion thereof is situated, unless the President stating the reasons therefor, in the public interest shall otherwise determine."

The sale of the stock in the present case was to a direct agency of the United States; hence, it came within the exception. No notice by advertisement or otherwise was required. Nor is the question of the sufficiency of the consideration subject to inquiry on this appeal. Complainants, however, may find themselves embarrassed, if they attempt to assail the good faith of the Custodian in making sale to the Director General of Railroads, since the rate per share was the same which complainants contracted to pay the German Corporation.

[3] Complainants, alleged citizens of a neutral country, brought the present suit under the provision of section 9 (a) of the act, as amended June 5, 1920, 41 Stat. 977, which provides:

"That any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States * * * may [after notice given] at any time before the expiration of six months after the end of the war institute a suit in equity"

—against the Custodian or the Treasurer to establish his claim, and the money or property must be held by the Custodian or in the Treasury to abide the final decree.

By section 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½c) the President may exercise any power granted by the act through such officers as he may direct. Therefore the authority committed to the Alien Property Custodian by the executive orders of October 12, 1917 and February 26, 1918, to determine, after investigation, whether property was subject to surrender or seizure under the act, is ample. Stoehr v. Wallace, 255 U. S. 239, 244, 41 Sup. Ct. 293, 65 L. Ed. 604. For these purposes the decision of the Custodian is final. If it develops that the property sequestered is claimed by a person not an enemy or ally of enemy, the courts of equity are open to him. In the present case, the remedy is ample to protect the rights of complainants, at the same time testing the validity of the alleged sale of the stock to complainants by the German Corporation. But these is-

sues are not raised by special appeal. The only question here is the necessity of an injunction pendente lite to insure the sequestration of the property to abide the decree of the court, and this is completely accomplished by 'the express terms of section 9 of the act itself (Comp. St. Ann. Supp. 1919, § 3115½e).

Indeed, the averment of the bill concedes that the proceeds of the sale were deposited by the Custodian in a special fund in the Treasury as the act requires. Inasmuch, therefore, as this proceeding cannot be extended beyond the determination of the right to recover the proceeds which came into the hands of the Custodian, complainants are as fully protected as they would be by an injunction. It must be presumed that the Alien Property Custodian and the Treasurer will perform their respective duties, and not, in defiance of the express commands of the statute, attempt to put the property beyond the jurisdiction of the court.

[4] The funds received by the Director General of Railroads from the sale of the stock to the Superheater Company are beyond the reach of this case. They have been turned into a revolving fund, appropriated to meet the expenses of operating the railroads under government control, and are now available to meet expenses incurred in closing up the affairs of the Railroad Administration. This money was appropriated for a specific purpose, and is available only for that purpose. It is entirely foreign to the powers granted the Alien Property Custodian. The Director General of Railroads and the Alien Property Custodian each derive their powers from acts of Congress, which have no relation whatever to each other. The Trading with the Enemy Act expressly limits the rights of claimants to property seized or the proceeds arising from the sale thereof by the Custodian. When the property is sold by the Custodian, the right of recovery conferred by the act ends with the proceeds received by him, which are required to be kept in separate designated funds for the satisfaction of claims that may be made against them.

[5] In the present case, it will be observed that the right of action is expressly limited to the recovery of the dividends, either in bonds or cash, which came into the possession of the Custodian, and the proceeds of the sale of the stock to the Director General of Railroads. To attempt to avoid this sale or pursue the fund derived from the sale of the stock by the Director General of Railroads to the Superheater Company would embrace in this proceeding matters of equitable cognizance directly involving rights of the United States, the adjudication of which was not contemplated by Congress when it conferred the right of action upon claimants as above set forth. In other words, it would convert the present inquiry into a suit against the United States in respect of matters in which the right to sue had not been granted. The right of recovery is restricted to the property seized or the proceeds derived from the sale of such property by the Custodian. This measures the jurisdiction conferred by Congress. In other words, the government has permitted itself to be sued only to the extent limited by the act. To extend this proceeding to embrace additional causes of action, would amount to subjecting the sovereign to a suit

in which it has not been made a party, and over which the court has not been accorded jurisdiction.

The action of the court in ordering the discharge of the rule to show cause was without error, and is accordingly affirmed, with costs.