## PFLUEGER v. UNITED STATES et al.

### No. 7613.

United States Court of Appeals for the
District of Columbia.

Argued Feb. 12, 1941.

Decided April 7, 1941.

———◆———

George L. Hart, Jr., and William R. Rodenberg, both of Washington, D. C., and Sherwood E. Silliman and Reuben D. Silliman, both of New York City, for appellant.

Frederick Bernays Wiener, of Providence, R. I., and Harry LeRoy Jones and Frederick L. Smith, both of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

## GRONER, C. J.

This is an appeal from a final order of the District Court dismissing, for lack of jurisdiction, a complaint brought under § 9 of the Trading with the Enemy Act[1] to recover the asserted difference between the value of the property of appellant— a naturalized American citizen[2]—seized by the Alien Property Custodian during the World War, and the amount realized for it by the Custodian. The latter sum had been previously paid over to appellant.

Johann Carl Pflueger was plaintiff below and is appellant here. He was born in the Kingdom of Hawaii in 1861. At the age of six, he was taken to Germany to be educated and except for two years' residence in Hawaii between 1884 and 1886, he lived in Germany until 1920. He then came to the United States, where he has remained ever since. During the first World War he was engaged in business in Bremen. At the time of American entry he was a shareholder in H. Hackfeld and Company, Ltd., and in Pacific Guano and Fertilizer Company, two Hawaiian corporations. In January 1918, his shares in these concerns were seized as enemy-owned property by the Hawaiian representative of the Alien Property Custodian. Under the direction of the Custodian, H. Hackfeld and Company was reorganized, its assets sold to a new corporation, and the proceeds from the sale of Pflueger's shares deposited in a numbered trust in the United States Treasury. His shares in the Pacific Company were sold by the Custodian at public auction and the proceeds likewise deposited. In 1920, when Pflueger came to the United States, he filed claims for the return of the seized property. These were allowed on the ground he was an American citizen, and the sum of $506,169, representing the proceeds of his shares of stock in both companies was returned to him. Pflueger executed releases of any claims he might have against the United States or any of its officers in respect to the seizure. Thereafter, in 1922, he filed a claim with the German-American Mixed Claims Commission, alleging his property was worth one hundred and ninety thousand odd dollars more than the amount returned to him. This claim was disallowed. In 1924, with other stockholders of Hackfeld and Company, he brought suit in the California courts against purchasers of the stock, alleging fraudulent conspiracy in the sale and placing the value of each share of common stock at $465. The suit

---

[1] Act of Oct. 6, 1917, ch. 106, 40 Stat. 411, 50 U.S.C.A.Appendix, § 9.

[2] Throughout we have assumed that appellant by virtue of his birth in Hawaii became and continued a subject and citizen of that Kingdom until its absorption by the United States under the provisions of the Hawaiian Organic Act of 1900, 48 U.S.C.A. § 491 et seq., and as the result of which he became thereafter a naturalized citizen of the United States. Cf. Cummings v. Isenberg, 67 App.D.C. 17, at page 19, et seq., 89 F.2d 489, at page 494, et seq.

resulted in a judgment for defendants.[3] In 1928 appellant brought suit in the District Court in Hawaii, charging fraud and consiracy in the sale of his Pacific stock. This suit was withdrawn. In 1929 he filed another unsuccessful claim with the Mixed Claims Commission to recover the difference between the actual value and the sale price of his Pacific stock, on the ground that the loss was caused by his detention against his will in Germany. In the same year he vainly undertook to re-open another Hawaiian case.[4] He also intervened in an accounting proceeding against Trent Trust Company as trustee in liquidation of Hackfeld and Company, which was decided adversely to him by the Supreme Court of Hawaii in 1937. The present suit was begun in November, 1937.

Appellant's position is that he is entitled to "just compensation" for his seized property, that the ascertainment of compensation is a judicial function, and that if § 7(c)[5] of the Trading with the Enemy Act is construed to limit his recovery to less than just compensation, the provision is unconstitutional.

The position of appellees is that by the express terms of § 7(c) recovery against the United States is limited to the proceeds of the seized property and that accordingly the District Court was correct in holding that it had no jurisdiction and in dismissing the bill.

These opposing positions present the issue here.

An answer to appellant's position may be found in our opinion in Sigg-Fehr v. White, 52 App.D.C. 215, 285 F. 949, 954. The Custodian had seized certain shares of stock alleged to belong to a German corporation and had sold them to the Director General of Railroads, who subsequently resold at a profit. The plaintiffs, Swiss nationals, alleging that they were the true owners of the stock, sued the Director General and the Custodian to enjoin them from disposing of the fund received by the former from the sale of the shares. We held that the sale by the Custodian to the Director General was valid under the express provisions of the Act and that plaintiffs' right to recover was limited by the provisions of § 7(c), and as to this right we said: "The right of recovery is restricted to the property seized or the proceeds derived from the sale of such property by the Custodian. This measures the jurisdiction conferred by Congress. In other words, the government has permitted itself to be sued only to the extent limited by the act. To extend this proceeding to embrace additional causes of action, would amount to subjecting the sovereign to a suit in which it has not been made a party, and over which the court has not been accorded jurisdiction."

This statement of the limitations of the Act would appear to control the decision here unless § 7(c) in the respects mentioned may be disregarded as unconstitutional (a question not passed on in the Sigg-Fehr case), or unless subsequent cases in the Supreme Court have over-ruled it. Appellant particularly relies upon Central Union Trust Co. v. Garvan, 254 U.S. 554, 566, 41 S.Ct. 214, 65 L.Ed. 403; Stoehr v. Wallace, 255 U.S. 239, 249, 41 S. Ct. 293, 65 L.Ed. 604; Miller v. Robertson, 266 U.S. 243, 248, 45 S.Ct. 73, 69 L.Ed. 265; Becker Steel Co. v. Cummings, 296 U.S. 74, 56 S.Ct. 15, 80 L.Ed. 54. In those cases the Supreme Court said, in general

---

[3] The California trial court found that "the price paid [to the Custodian] was adequate" (Isenberg v. Sherman, 212 Cal. 454, 298 P. at page 1007). On appeal, the evidence was examined at length and found to support the finding and to show that a higher price could hardly have been obtained. Isenberg v. Sherman, 212 Cal. 454, 298 P. 1004, 1015–1017, rehearing denied, 212 Cal. 507, 299 P. 528, motion to recall remittitur denied, 214 Cal. 722, 7 P.2d 1006, certiorari denied, 286 U.S. 547, 52 S.Ct. 501, 76 L.Ed. 1283.

[4] Pflueger v. Sherman, 293 U.S. 55, 55 S.Ct. 10, 79 L.Ed. 193; Pflueger v. Sherman, 9 Cir., 75 F.2d 84, certiorari denied, 296 U.S. 584, 56 S.Ct. 94, 80 L.Ed. 413.

[5] Section 7(c), 40 Stat. 1020, Tit. 50 U.S.C.A.Appendix:

"The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this Act, and in the event of sale or other disposition of such property by the Alien Property Custodian, shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the United States."

language, that the provision for remedies in the Act should be construed broadly enough to give to citizens and alien friends an adequate remedy for the invasion of their property rights in the exercise of the war powers of government, and that any other construction would raise doubts of the constitutionality of the statute as applied to non-enemies. But none of the cited cases discuss the exact problem we have to decide.

■ Section 7(c) of the statute under which relief is asked is explicit.—The remedy shall be limited to the net proceeds received by the Custodian from the sale of the seized property.[6]—To construe this language to allow suit for "just compensation", after delivery to claimant of the whole "net proceeds", would clearly be in contravention both of the language used and the obvious Congressional intent. The Supreme Court has said in a similar situation: "We fully concede that it is the duty of a court in considering the validity of an act to give it such reasonable construction as can be reached to bring it within the fundamental law. But it is very clear that amendment may not be substituted for construction, and that a court may not exercise legislative functions to save the law from conflict with constitutional limitation." Yu Cong Eng v. Trinidad, 271 U.S. 500, 518, 46 S.Ct. 619, 623, 70 L.Ed. 1059, and see also United States v. Reese, 92 U.S. 214, 221, 23 L.Ed. 563; Trade Mark Cases, 100 U.S. 82, 98, 25 L.Ed. 550; Butts v. Merchants & Miners Transportation Company, 230 U.S. 126, 135, 33 S.Ct. 964, 57 L.Ed. 1422.

■ If we apply this rule, as we must, it is of course our duty to look at the statute as a whole and not, as counsel for appellant suggest, to disregard § 7(c) insofar as it limits his cause of action. For to do this would be to make a new law, and this of course would be to substitute the judicial for the legislative department of government. Butts v. Merchants & Miners Transportation Company, supra, 230 U.S. at page 135, 33 S.Ct. 964, 57 L.Ed. 1422. The reason for this is that "If we should, in the case before us, undertake to make by judicial construction a law which Congress did not make, it is quite probable we should do what, if the matter were now before that body, it would be unwilling to do". Butts case, 230 U.S. at page 136, 33 S.Ct. 964, at page 966, 57 L.Ed. 1422. Even if we concluded that the Congressional limitation of remedy to the amount of "net proceeds", instead of just compensation, was unconstitutional, the effect would be to invalidate the entire statute and to remove all of the provision for remedy under which appellant seeks to proceed. See Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 565, 22 S.Ct. 431, 46 L.Ed. 679; Spraigue v. Thompson, 118 U.S. 90, 96, 6 S.Ct. 988, 30 L.Ed. 115. But we need not pass on the point, for the immunity of the sovereign from suit is paramount, even over rights founded on the Constitution.

"For consent to sue the United States is a privilege accorded, not the grant of a property right protected by the Fifth Amendment. The consent may be withdrawn, although given after much deliberation and for a pecuniary consideration. * * * The sovereign's immunity from suit exists whatever the character of the proceeding or the source of the right sought to be enforced. It applies alike to causes of action arising under acts of Congress, * * * and to those arising from some violation of rights conferred upon the citizen by the Constitution. * * * immunity from suit is an attribute of sovereignty which may not be bartered away." Lynch v. United States, 292 U.S. 571, 581, 582, 54 S.Ct. 840, 844, 78 L.Ed. 1434.

■ We are of opinion, therefore, that Congress having in express and unambiguous language declared that both relief and remedy should be limited to the property coming into the hands of the custodian or if disposed of by him, to its net proceeds, and it appearing here that appellant has already received all that Congress said he might sue for and recover, his suit for more cannot be maintained and the argument on constitutionality is beside the point. The Fifth Amendment of the Constitution does not, as appellant assumes in his complaint, of itself confer jurisdiction in the court below to entertain a suit against the sovereign. See Lynch v. United States, supra.

■ We find nothing in Becker Steel Co. v. Cummings, supra [296 U.S. 74, 56 S.Ct. 19, 80 L.Ed. 54], upon which to hang jurisdiction. That case did not hold that

---

[6] See full text of § 7(c) in note 5, supra.

it existed to give a judgment in excess of net proceeds. The plaintiff was seeking to recover the amount realized on the sale by the Custodian without any deductions for expenses of sale. The statute limits the remedy to the net proceeds "held" by the Custodian or by the Treasurer. In the effort to avoid unconstitutionality, the Court construed this to mean "held", not at the time of suit, but at any time after the sale. The discussion of this point is very pertinent.

"* * * 'Net proceeds of sale' thus means no more than gross proceeds less charges which may be rightly deducted and we think that the direction that the remedy is to be limited to net proceeds 'held' by the Custodian must be taken, not in the narrow and restricted sense *as indicating only the proceeds retained by him at the precise moment of entering the decree, but as signifying proceeds held by him at any time and not lawfully disbursed.* Such a construction does no violence to the language of the act and conforms to and is supported by its dominant purpose, often recognized by this Court, to give to citizens and alien friends an adequate remedy for invasions of their property rights in the exercise of the war powers of the government. Any other construction by denying such a remedy would raise grave doubts of the constitutionality of the statute as applied to nonenemies." (Italics added.)

The Court was thus at pains to show that its construction would not do violence to the statutory language. But to go beyond the "gross proceeds", as appellant now seeks to do, would do violence to § 7(c) and create rights which Congress had not recognized. The Becker Steel Company case is, therefore, distinguishable on this ground.

■ This being a suit against the United States[7] and appellant not having brought himself within the terms of the Government's consent to be sued, the trial court was without jurisdiction and its decision to that effect was, therefore, clearly right and is affirmed. Cf. United States v. Sherwood, 61 S.Ct. 767, 85 L.Ed. ——, decided March 31, 1941.

Affirmed.

---

[7] Cummings v. Societe Suisse, 66 App.D.C. 121, 85 F.2d 287.