**UEBERSEE FINANZ–KORPORATION, A. G., v. MARKHAM, Alien Property Custodian.**

**No. 9187.**

United States Court of Appeals District of Columbia.

Argued May 28, 1946.

Decided Oct. 21, 1946.
Writ of Certiorari Granted Feb. 17, 1947.
See 67 S.Ct. 772.

EDGERTON, Associate Justice, dissenting.

———◆———

Mr. Richard J. Connor, of Washington, D. C., with whom Mr. Bart W. Butler, of Washington, D. C., was on the brief, for appellant.

Mr. Herbert Wechsler, Special Assistant to the Attorney General, of New York City, with whom Mr. Harry LeRoy Jones, Special Assistant to the Attorney General, of Washington, D. C., was on the brief, for appellee. Mr. Wallace H. Walker, of Washington, D. C., Department of Justice, also entered an appearance for appellee.

Before GRONER, Chief Justice, and EDGERTON and PRETTYMAN, Associate Justices.

GRONER, C. J.

The decision in this case turns upon the question whether the amendment of § 5(b) of the Trading with the Enemy Act by Title III of the First War Powers Act of 1941 has, by necessary implication, the effect of nullifying and rendering impotent § 9(a) of the original Act.[1] Or, stated

---

[1] 50 U.S.C.A. War Appendix, § 9(a), 41 Stat. 977, provides: "Any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property * * * conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him * * * may institute a suit in equity * * * in the district court of the United States * * * to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian * * * or the interest therein to which the court shall determine said claimant is entitled."

50 U.S.C.A. Appendix, § 616, 55 Stat. 839, 840, amending § 5(b) of the Trading with the Enemy Act, provides: "During the time of war * * * any property or interest of *any foreign country or national thereof* shall vest, when, as, and upon the

more concisely, whether the amendment of § 5(b) in 1941, of itself and without more, renders inoperative the rights conferred under § 9(a) of the original Act.

Appellant is a corporate national of Switzerland and at the outbreak of World War II was the owner of certificates of stock in sundry American corporations. The Alien Property Custodian, under authority of amended § 5(b) and under Executive Orders 9095 and 9193, 50 U.S.C.A. Appendix, § 6 note, seized appellant's property as the property of a "foreign country or a national thereof" and vested the same in himself. Since precisely this procedure is authorized under that section, obviously no exception can be had to this. But at that point appellant, claiming the right to recover the vested property under the provisions of § 9(a) of the Act, brought this suit, alleging, among other things, that before and at the time of the seizure it was a citizen of Switzerland; that it was not an enemy or ally of enemy; that it was not a "national of a designated enemy country"; and that the property was not then nor at any other time held for the benefit of an enemy or ally of enemy, nor for the benefit of a "national of a designated enemy country."

The Custodian filed a motion to dismiss on the ground that the complaint failed to state a valid cause of action, and the District Court, without opinion, granted the motion. From that action this appeal is taken.

■ The basis of the motion to dismiss is that it appears on the face of the complaint that appellant is a national of a foreign country and, this being conceded, the Custodian insisted and now insists that under the amended § 5(b) the vesting is absolute and not subject to attack.[1a] To avoid conflict with the constitutional prohibition against the taking of property of friendly aliens without just compensation, which such a construction would raise, the Custodian suggests that appellant may obtain just compensation by way of suit against the United States in the Court of Claims. But that suggestion conflicts with § 7(c) of the Act,[2] which provides—"The sole relief and remedy of any person having *any claim to any money or other property * * * transferred * * * to the Alien Property Custodian * * ** shall be that provided by the terms of this Act*," i. e., § 9(a). Thus appellant's right of recovery, if it has any, is limited by statutory terms to a suit under § 9(a), for only to that extent and in that manner has the United States consented to be sued. Pflueger v. United States, 73 App.D.C. 364, 121 F.2d 732, certiorari denied 314 U.S. 617, 62 S.Ct. 98, 86 L.Ed. 497; Sigg-Fehr v. White, 52 App.D.C. 215, 285 F. 949.

It will thus be seen that the Custodian's position is not only that the vesting of the property is within the authority delegated to him—which is not denied—but also that § 9(a) of the Act, which specifically confers jurisdiction on the several district

---

terms, directed by the President, in such agency or person as may be designated from time to time by the President, and upon such terms and conditions as the President may prescribe such interest or property shall be held, used, administered, liquidated, sold, or otherwise dealt with in the interest of and for the benefit of the United States, * * *." (Italics supplied.)

[1a] The language of amended § 5(b) as to vesting is—"Such interest or property shall be held, used, administered, liquidated, sold, or otherwise dealt with in the interest of and for the benefit of the United States." And the position of the Custodian is that this language vests the property in the Custodian unqualifiedly and completely. The language used is broad, but it is no broader than the language used in the vesting provision of the original

Act, Act of March 28, 1918, amending § 12, c. 28, 40 Stat. at L. 459–460, 50 U.S. C.A.Appendix, § 12, wherein the Custodian was given the power to sell and manage such property as though he were the absolute owner. But on a similar claim under that provision the Supreme Court, in Central Union Trust Co. v. Garvan, infra [254 U.S. 554, 41 S.Ct. 216], said:

"All this may be conceded if no claim is filed. But this act did not repeal section 9, which is amended by the later Acts of July 11, 1919, c. 6, 41 Stat. 35, and of June 5, 1920, c. 241, 41 Stat. 977, and as we have said, provides for immediate claim and suit and requires the property in cases of suit to be retained in the custody of the Alien Property Custodian or in the Treasury of the United States to abide the result."

[2] 50 U.S.C.A. War Appendix, § 7(c).

courts to entertain a proceeding to inquire into the question whether the seized property is owned by "an enemy or ally of enemy," and if not so owned, to order its return, is, since the passage of the amendment to § 5(b), inapplicable in the case of property owned by any foreign national which has been seized by the Custodian.

■ The Custodian attempts to avoid the stark obliteration from § 9(a) of the words "Any person not an enemy or ally of enemy," by saying that that section limits recovery to "the interest therein" of the claimant, and accordingly the Custodian insists there may be no recovery here because seizure under amended § 5(b) destroys all interests of all aliens in seized property. But there is nothing in § 5(b) to sustain this view and to adopt it would read into that section words that are not there and at the same time, and with just as little warrant, read out the quoted words from § 9(a). This assumes, we think, too much. In any event, to sustain the Custodian's position not only would require a major job of statutory reconstruction, bu would also—as to the property of friendly aliens—raise grave doubts as to the con stitutionality of the law. And this, of course, it is not permissible to do. See Becker Steel Co. v. Cummings, 296 U.S. 74, 56 S.Ct. 15, 80 L.Ed. 54; Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604; Central Union Trust Co. v. Garvan, 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403. In our view, what was said by the Supreme Court in the recent case of Markham v. Cabell, 326 U.S. 404, 66 S.Ct. 193, is conclusive against such action. In that case, as in this, the Custodian contended that the amendment to § 5(b) armed the Executive with far more comprehensive powers over enemy property and the property of other foreign interests, including friendly and allied interests, than in World War I, and that the effect of this was to withdraw the right to sue explicitly granted by § 9(a) of the Act. But the Court rejected this claim, and expressly held that the right to sue granted by § 9(a) should not be read

out of the law. The Supreme Court said:[3] "We can find no indication in the 1941 legislation that Congress by amending § 5 (b) desired to delete or wholly nullify § 9(a). On the contrary, the normal assumption is that where Congress amends only one section of a law, leaving another untouched, the two were designed to function as parts of an integrated whole."

■ Read as we read them, § 5(b) as amended and § 9(a) do not conflict, but rather constitute a reasonable program to meet the emergency of war. Under the Act as it was in World War I, the seizure of alien property was limited to that of enemies, and the seizure was "after investigation." Thus, a determination of enemy ownership was a prerequisite to seizure.[4] A more expeditious procedure to assure quick protection of our economy against enemy influence was to seize initially *all* alien property, and then upon investigation and with the burden of producing the facts placed upon the claimant rather than upon the Custodian, to return the property of aliens not enemies. Amended § 5(b) and § 9(a), when read together, prescribe exactly that procedure. The amendment of § 5(b) did not nullify § 9(a), nor was it inconsistent therewith. Indeed, it seems to us that the haste imposed by war required additional assurance against unwarranted seizure.

We have found nothing and reason suggests nothing to indicate that the dominant purpose of the Act—the elimination of enemy influence in our economy—has been changed, or that the calamity of war was to be used to eliminate and destroy *all* alien investment in the United States. Certainly, it cannot be urged that Congress intended to jeopardize, without adequate remedy, the billions of dollars of allied and friendly nations' property merely because of its temporary presence in this country in time of war, and the purpose in the enlargement of § 5(b) must necessarily have been to reach with confiscation only that portion tainted with an enemy interest. And that this is true is definitely shown, we think,

---

3 326 U.S. 404–411, 66 S.Ct. 193, 196.
4 The Custodian says that a summary determination was sufficient. Whether summary or not, the statute made the investigation a preliminary and not a subsequent step to seizure.

in the fact that Congress has twice refused to write the Custodian's present construction into the law.[5] But even if that conjecture be dismissed, there is nothing to support the theory of the Custodian that the new legislation eliminated all remedy as to all foreign rights. For obviously, such a purpose would run headlong into constitutional objections.

Accordingly, it seems to us quite clear that neither the language of the amendments nor the policy of Congress, as shown by the revised legislation, contemplated the position taken by the Custodian here. It follows, therefore, that the judgment below must be reversed and the case remanded for trial in accordance with the views expressed in this opinion.

Reversed and remanded.

EDGERTON, Associate Justice (dissenting).

Section 9(a) still gives a remedy, as it always did, against unauthorized takings of property. But taking the property of a friendly alien is now expressly authorized by § 5(b). As the court concedes, the property in suit "vested" in the Custodian. The vesting for which § 5(b) provides is unqualified and complete. The property may be "used, * * * sold, or otherwise dealt with" by the Custodian. This precludes retention by appellant of any interest in the property.

The policy of § 5(b) is clear. Nominal ownership by nominal neutrals is often a front for, or otherwise equivalent to, enemy control. Such arrangements are often hard to detect and usually harder to prove. To defeat them, Congress authorized the Custodian to vest in himself the property of any foreign national. It does not appear that they can be defeated otherwise.

I do not understand how § 9(a) can be thought to give appellant a claim to recover property which is no longer his. The court states that § 9(a) specifically confers jurisdiction to inquire whether seized property is owned by an enemy or ally of enemy, and if not so owned, to order its return. I cannot find this provision in § 9(a). What this section, as I read it, specifically confers is jurisdiction to award to a claimant whose "interest" or "title" is "established * * * the * * * property * * * or the interest therein to which the court shall determine said claimant is entitled." Appellant has no interest or title in the property in suit, since the property is vested unqualifiedly in the Custodian.

Compensation for the taking of the property is a different matter. The Tucker Act, 28 U.S.C.A. § 250, permits recovery in the Court of Claims on any claim "founded upon the Constitution of the United States or any law of Congress * * * [or] upon any contract, express or implied, with the Government of the United States * * *." And "it is settled by many decisions of which we need only cite the last—Yearsley v. W. A. Ross, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554—that when the United States seizes the property of an individual, not an enemy, in pursuance of a public purpose, it impliedly promises to pay just compensation, and that that promise is 'just compensation' under the Fifth Amendment." Silesian-American Corporation v. Markham, 2 Cir., 156 F.2d 793, 797. The former owner's claim to compensation is not affected by the provision in § 7(c) that "the sole relief and remedy of any person having any claim to any money or other property * * * transferred" shall be that provided by the Act, since a claim to compensation for the taking of property is not a claim to the property. Accordingly I see no constitutional difficulty in the statutory scheme.

[5] H.R.4840, 78th Cong. 2nd Sess. (died in Committee). H.R.5089, 79th Cong. 2nd Sess. (reintroduced as H.R.6890, 79th Cong. 2nd Sess.), contained in § 33 provision that "a foreign * * * national * * * may not * * * maintain a suit pursuant to 9(a) hereof." This section, together with an identical section contained in S.2378, 79th Cong. 2nd Sess., was deleted and the remainder of the bill was passed.