## LATVIAN STATE CARGO & PASSENGER S. S. LINE v. CLARK.
### Civ. No. 2610–48.

United States District Court
District of Columbia.

Nov. 4, 1948.

Horace S. Whitman, of Washington, D. C., and Charles Recht, of New York City, for plaintiff.

David L. Bazelon, George B. Searls and Victor R. Taylor, all of Washington, D. C., for defendant.

PINE, District Judge.

This is an action under Section 9(a) of the Trading with the Enemy Act, as amended, 50 U.S.C.A.Appendix, § 9(a). Defendant has moved for a summary judgment. The following facts are undisputed:

In June 1940 the armies of Soviet Russia invaded and occupied the territory of the then Republic of Latvia. Thereafter a soviet form of government was set up in Latvia, and the new government incorporated Latvia into the Union of Soviet Socialist Republics. In the same year the soviet government of Latvia issued decrees "nationalizing" Latvian shipping enterprises. These decrees included three ships then in private ownership, and purportedly vested title thereto in the plaintiff, a corporate entity organized under the laws of the U.S.S.R. At the time of these decrees, none of these ships was in Latvian waters, and there was no physical seizure of them by the government of Latvia. In 1942 all of them were sunk. They were insured, and the proceeds of the insurance, together with certain accrued earnings, were turned over to court-appointed trustees in New York. In 1943 Latvia was occupied by the

German armies, and defendant's predecessor in office, by vesting orders, seized these funds. Plaintiff has claimed them by virtue of title to these ships under the "nationalization" decrees above mentioned. Defendant has dismissed its claim, and this action has ensued.

The certificates of the Secretary of State, made a part of this record, disclose that the United States does not recognize the Soviet regime in Latvia, nor the incorporation of that country into the Union of Soviet Socialist Republics, nor the legality of any of the acts or decrees of that regime.

It is defendant's contention that the courts of the United States may not give effect to the decrees of a regime in Latvia which has not been recognized by the United States, and that plaintiff therefore has no title to the funds in controversy.

■■■ Questions of the recognition or non-recognition of foreign governments are beyond the reach of the courts. They are committed exclusively to the political department of government, and the courts are bound by its decisions thereon. This rule is equally applicable to de jure or de facto recognition. Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 137, 138, 58 S.Ct. 785, 82 L.Ed. 1224. Lehigh Valley R. R. Co. v. State of Russia, 2 Cir., 21 F.2d 396. As a corollary of this principle, a court may not give effect to an act of an unrecognized government, for by so doing it would tacitly recognize the government, invade the domain of the political department, and weaken its position. It would therefore appear that this court may not sustain the plaintiff's title, which stems from an act of an unrecognized government, and being without a title which can be upheld by the courts, its claim to property based thereon must fall.

But it is not necessary to depend solely on deduction, unsupported by legal authorities, in reaching a decision adverse to the plaintiff. As early as 1822, the Supreme Court had a similar question before it in the case of The Nueva Anna, 6 Wheat. 193, 5 L.Ed. 239. This was an appeal from the District Court of Louisiana, and involved cargoes of two Spanish ships condemned by "a pretended court of admiralty at Galveztown * * * under the alleged authority of the Mexican Republic." The goods, after this proceeding, were brought into the port of New Orleans and libeled by the original Spanish owners in the District Court. That court decreed restitution to the original owners, and the captors appealed to the Supreme Court, which held that it "did not recognize the existence of any court of admiralty sitting at Galveztown * * * nor had the government of the United States hitherto acknowledged the existence of any Mexican republic or state at war with Spain; so that the court could not consider as legal, any acts done under the flag and commission of such republic or state."

Passing to recent authority, the United States Court of Appeals for the 3d Circuit had the identical question before it in 1944 in The Maret, 145 F.2d 431, 442. In that case it was established that after the armies of the U.S.S.R. occupied Estonia in 1940 the Soviet Socialist Republic of Estonia was created. This Government promulgated decrees purporting to nationalize ships of Estonian registry, and by proclamation The S. S. Maret, one of such ships, was purportedly transferred to the Estonian State Steamship Line organized by the People's Commissar of the Maritime Fleet. The Soviet Socialist Republic of Estonia had not been recognized by the United States. The Court, in an opinion by Judge Biggs, held, on the question of the ownership of The Maret, that "When the fact of nonrecognition of a foreign sovereign and nonrecognition of its decrees by our Executive is demonstrated * * *, the courts of this country may not examine the effect of decrees of the unrecognized foreign sovereign and determine rights in property, subject to the jurisdiction of the examining court, upon the basis of those decrees." The court referred to and relied heavily upon the doctrine announced by the Supreme Court in United States v. Pink, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796, decided in 1942. That case is the converse of the instant case, but the principle announced therein would appear to be conclusive of the question here involved. In the Pink case the executive had decided, as

part of the settlement with Russia in 1933, to permit the application of the Russian nationalization decrees to property located in New York. That determination with respect to these decrees was expressed in the recognition of the soviet government as the government of Russia and the concurrent Litvinov Assignment. The Supreme Court, speaking through Mr. Justice Douglas, held that that determination was binding on the Court, and that the power of the executive in the field of foreign relations is not limited to the "recognition" of foreign governments as manifested by the receiving or sending of diplomatic representatives, but includes the power "to determine the public policy of the United States with respect to the Russian nationalization decrees * * *. We would usurp the executive function if we held that that decision was not final and conclusive in the courts." 315 U.S. at pages 229, 230, 62 S.Ct. at page 565.

The contention of plaintiff that it is entitled to "just compensation under the Fifth Amendment to the Constitution," is untenable, by reason of the fact that this is an action to recover property seized by the Alien Property Custodian and is not a suit for just compensation. Pflueger v. United States, 73 App.D.C. 364, 121 F.2d 732, certiorari denied, 314 U.S. 617, 62 S.Ct. 98, 86 L.Ed 497. Becker Steel Co. v. Cummings, 296 U.S. 74, 56 S.Ct. 15, 80 L.Ed. 54, cited by the plaintiff, is not to the contrary. Its contention that the ships in question, being ships at sea, were constructively part of the territory of Latvia and subject to its decrees, is not relevant to this case, as the doctrine referred to "partakes more of the characteristics of personal than of territorial sovereignty." Cunard S. S. Co. v. Mellon, 262 U.S. 100, 123, 43 S.Ct. 504, 507, 67 L.Ed. 894, 27 A.L.R. 1306. Moreover, these contentions overlook the threshhold barrier that plaintiff has no title recognizable by the courts to support its claim. The cases cited by plaintiff in respect of the treatment by the courts after the Civil War to acts of the Confederacy and the Confederate States are not apposite.

The motion of defendant for summary judgment will therefore be granted. Counsel will submit judgment in accordance herewith.