This suit was instituted in a court of a justice of the peace of Kaw Township, Jackson County, Missouri, against the defendant, to recover the sum of $390.91 for loss alleged to have been sustained by plaintiff on account of the freezing of a carload of potatoes shipped by plaintiff in Northern Pacific car No. 97034, on or about November 13, 1917, from Lolo, Mont., shipper's order bill of lading to Kansas City, Mo.
The contract for carriage was made with the Northern Pacific Railway Company at Lolo, Mont., on November 13, 1917, for shipment to Kansas City, on a through bill of lading to destination, and provided for carriage over said railway to Billings, Mont., and delivery at that point to defendant for carriage to Kansas City, Mo. The contract provided for shipment under option No. 2, which meant that protection from frost and freezing should be provided by the carrier.
The shipment moved, as provided by the bill of lading, from Lolo, Mont., over the Northern Pacific Railway, a distance of 369 miles and was there delivered to defendant which carried it a distance of 1047 miles to final destination. Plaintiff was present at Lolo when the shipment was weighed by a weighmaster, and made a notation of each wagon load, as announced by the weighmaster. He did not examine the scale beam as each load was weighed but later compared his memoranda of the weights with those of the weighmaster.
When the shipment was delivered to consignee at Kansas City some of the potatoes were frozen and had to be dumped, while another portion had to be disposed of at a price less than the current market value of potatoes not damaged by freezing. There is no evidence of the *Page 95 
condition of the car and its contents at the time of the delivery to defendant, and none until the unloading inspection. The statement upon which the suit was instituted is as follows:
"Defendant to plaintiff debtor:
"Account of potatoes contained in car No. 97034 shipped from Lolo, Montana, on or about November 13, 1917, and received by the defendant in good condition and which the defendant delivered in a frozen, decayed and damaged condition and for delay in transit, $390.91. Wherefore plaintiff demands judgment in the sum of $390.91, together with the costs of this action."
The issues were found for plaintiff in the justice court and his damages assessed at $331.50. In due time the cause was appealed to the circuit court of Jackson County, where a trial resulted in a verdict and judgment in favor of plaintiff in the sum of $323. Motions for new trial and in arrest were overruled and defendant appeals.
The first assignment of error is based upon the refusal of the court to give instructions 1, 2, 3 and 6, in the nature of demurrers offered on behalf of defendant at the close of the entire case. These instructions are based upon the Carmack Amendment to the Hepburn Act. [Sec. 8604-A, U.S. Comp. Stat. 1918; sec. 7, 34 Stat. 595; sec. 1, 38 Stat. 1196; 39 Stat. 441.] In support of this contention it is urged that the action is bottomed upon an interstate shipment of freight and is therefore governed by the Act of Congress of June, 1906; that defendant, under the provisions of said Act, as a connecting and final carrier, is liable only for such loss as occurs on its own line; that there is no evidence in the case as to when the loss, if any, occurred; that plaintiff was erroneously permitted to rely upon the common-law presumption of loss in the hands of the terminal carrier to make his case. The Carmack Amendment provides, in part (sec. 8604-A, U.S. Comp. Stat. 1918):
"Any common carrier, railroad, or transportation company, subject to the provisions of this act receiving *Page 96 
property for transportation from a point in one State . . . to a point in another State . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass, within the United States . . . when transported on a through bill of lading . . . Provided, further, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law . . ."
Defendant bases its hope of reversal upon the application of the clause above quoted to the facts in this case, and argues that the United States Government has control over the entire field of interstate commerce by virtue of section 8, article 1, of the Constitution of the United States.
In construing the clause above quoted, there must be kept in mind the proviso "that nothing in this section shall deprive the holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law . . ." There is no contention by plaintiff that the Federal Government, by the interstate commerce act, has not assumed jurisdiction over interstate shipments by common carriers. It is conceded that no rights remain to the states relative to such regulations where such control is assumed by the Federal Government and that the rulings of the United States courts relative thereto become the law and must be followed, notwithstanding existing decisions by State courts contrary thereto.
In the case of Adams Express Co. v. Croninger, 226 U.S. 491, l.c. 507-8, it is said:
"To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing Federal law at the time of his action, gives to it a more rational interpretation than *Page 97 
one which would preserve rights and remedies under existing State laws, for the latter view would cause the proviso to destroy the act itself. One illustration would be a right to a remedy against a succeeding carrier, in preference to proceeding against the primary carrier, for a loss or damage incurred upon the line of the former. The liability of such succeeding carrier in the route would be that imposed by this statute, and for which the first carrier might have been made liable."
The act would seem to limit the liability imposed upon the carrier to "loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered," and plainly implies a liability for some default in its common-law duty as a common carrier.
In the case of Texas Pac. Ry. Co. v. Abilene Cotton Mills Co., 204 U.S. 426, it was claimed, as in the case at bar, that section 22 of the Hepburn Act continued in force all rights and remedies existing under the common law, but the court said that it was "evidently only intended to continue in existence such other rights or remedies for the redress of some specific wrong or injury, whether given by the Interstate Commerce Act, or by State statute, or common law, not inconsistent with the rules and regulations prescribed by the provisions of this act." It was also said that it could "not in reason be construed as continuing in a shipper a common-law right the existence of which would be inconsistent with the provisions of the act. In other words, the act cannot be said to destroy itself."
Plaintiff contends that the Carmack Amendment has not deprived the shipper of his common-law right to sue the delivering carrier and that the presumption still remains that goods which are shown to have been delivered to the initial carrier remained in the same condition until delivered to the delivering carrier; that this is a rule of evidence and not a matter of substantive law.
We agree with plaintiff's counsel on the soundness *Page 98 
of this position. The last ruling of the U.S. Supreme Court on this question is found in the case of Chicago Northwestern Ry. Co. v. Whitnack Prod. Co., 42 U.S. Supreme Court Reporter, p. 328, and is against the contention of defendant herein. In that case the Produce Company recovered a judgment against the delivering carrier for damages to two carloads of apples transported during November, 1914, upon through bills of lading, over connecting lines from points in New York State to a point in Nebraska. The evidence tended to show that the apples were in good condition when received by the initial carrier but were frozen when delivered at destination. Where the damage occurred was not shown. The defendant moved for a directed verdict, claiming no recovery could be had against it without affirmative evidence that it caused the damage. The motion was overruled and the jury instructed that there was a presumption of damage upon the line of the last carrier, and the Supreme Court of Nebraska approved the charge. The only question presented for consideration in that case was whether, since the Carmack Amendment (Comp. Stat., paragraphs 8604-a, 8604-aa), a presumption arises that the injury occurred on the delivering carrier's line where goods moving in interstate commerce, upon a through bill of lading, are delivered in bad condition and the evidence shows they were sound when received by the initial carrier, but does not affirmatively establish where the loss occurred.
The court said: "It is established doctrine that the rights and liabilities in respect of damage to goods moving in interstate commerce under through bills of lading depend upon acts of Congress, agreements between the parties and common-law principles accepted and enforced in the Federal courts. [New York Central, etc. R.R. v. Beaham, 242 U.S. 148, 151, 37 Sup. Ct. 43, 61 L.Ed. 210.] While this court has not expressly approved it, we think the common-law rule, supported both by reason and authority, is correctly stated in section 1348, Hutchinson on Carriers (3d Ed.): *Page 99 
"`A connecting carrier, who has completed the transportation and delivered the goods to the consignee in a damaged condition or deficient in quantity, will be held liable in an action for the damage or deficiency, without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he has delivered them. The condition and quantity of the goods when they were delivered to the first of the connecting carriers being shown, the presumption will arise that they continued in that condition down to the time of their delivery to the carrier completing the transportation and making the delivery to the consignee, and that the injury or loss occurred while they were in his possession.' (Cases cited.)
"The petitioner insists that this common-law rule conflicts with the Carmack Amendment to the Interstate Commerce Act, c. 3591, 34 Stat. 584, 595, which requires issuance of a through bill of lading by initial carrier and declares it liable for damage occurring anywhere along the route, as interpreted and applied by this court. But we find no inconsistency between the amendment or any other Federal legislation and the challenged rule. Properly understood, Charleston, etc. Ry. Co. v. Varnville Furniture Co., 237 U.S. 397, 35 Sup. Ct. 715, 59 L.Ed. 1137, Ann. Cas. 1916D, 333, especially relied upon gives no support to the contrary view.
"That cause involved the South Carolina statute which imposed a penalty of $50 upon the carrier for failure to pay within forty days for damages suffered by goods in transportation in interstate commerce. The opinion expressly states, `The defendant contended that the law imposing the penalty was invalid under the Act to Regulate Commerce, especially section 20, as amended by the Act of June 29, 1906, . . . known as the Carmack Amendment,' refers to the penalty as `the only matter that we are considering,' and points out that `the State law was not contrived in aid of the policy of Congress, but to enforce a State policy differently conceived.' As the Supreme Court of South Carolina sustained *Page 100 
the act and permitted recovery of the penalty, its judgment was necessarily reversed.
"Here there is no question of conflict between a State statute and any Federal policy; and nothing in the words of the amendment indicates a legislative purpose to abrogate the accepted common-law doctrine concerning presumption. The suggestion that by imposing additional liability upon the initial carrier the amendment provides an adequate remedy for shippers, and thereby removes the necessity for any presumption against the terminal one and impliedly abrogates the rule, is unsound. There are adequate reasons why shippers should have the benefit of both; and we think Congress so intended."
This is the last utterance of the Supreme Court of the United States on this point, and it determines fully the question involved in this cause. We must follow that decision and therefore we hold that in the state of the record, plaintiff had its right of action against defendant; and there was no error in the action of the trial court in refusing to give defendant's peremptory instruction. This ruling disposes of the first of defendant's points, against its contention.
Defendant urges reversal on the ground that all testimony of plaintiff covering the weight of the shipment at point of origin should have been stricken from the record.
We cannot agree with defendant on this contention. The testimony tends to show that when the shipment was weighed by the weighmaster, plaintiff was present, made notations of each load as announced by the weighmaster, and later compared his memoranda of weights with those of the weighmaster and found them correct. This memoranda was introduced in evidence. Defendant contends that plaintiff had no personal knowledge of the weights of the various loads, and that his evidence was incompetent.
We are unable to stand with defendant in this position. The memoranda identified and introduced in evidence *Page 101 
was made contemporaneous with the weighing of the shipment and was competent. [Abel v. Strimple, 31 Mo. App. 87; Ridenour v. Wilcox Mines Co., 164 Mo. App. 576, 147 S.W. 852.] That the memoranda was properly introduced there can be no question, and the action of the court relative thereto was proper. It follows from what has been said that the judgment should be affirmed. It is so ordered. All concur.